UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.11-CV-22765-SEITZ
MAGISTRATE JUDGE P.A. WHITE

MICHAEL P. FLYNN,                 :

    Petitioner,              :

v.                                :    <u>SUPPLEMENTAL REPORT</u>
                                       <u>OF MAGISTRATE JUDGE</u>
MICHAEL D. SCREWS,                :

      Respondent.          :
_____

<u>Introduction</u>

Michael P. Flynn, a state prisoner while confined at Northwest Florida Reception Center at Chipley, Florida, filed a <u>pro</u> <u>se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 attacking his convictions and sentences entered in Case Nos. 03-19458 and 04-32198 in the Eleventh Judicial Circuit Court of Florida, at Miami-Dade County. (DE#1).

This cause has been rereferred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts. (DE#36).

Currently for consideration before the Court is this habeas petition (DE#1), the state's responses (DE#17,42) with multiple exhibits (DE#18,19,41) to this Court's orders to show cause, petitioner's reply to the respondent's supplemental response (DE#51), and the respondent's responses thereto. (DE#52,53).

<u>Claims</u>[1]

---

[1]Claims three, seven and eight are no longer before this Court for consideration as petitioner concedes dismissal thereof is proper. (DE#51:16,29).

In this habeas proceeding, the petitioner raises the following claims:

1.  Petitioner was denied his Fourteenth Amendment right to due process of law when the state trial court failed to fully advise him of the direct consequences of his guilty plea. (DE#1:2).

2. Petitioner was denied his Fourteenth Amendment right to due process of law when the state trial court failed to ensure a factual basis existed to support petitioner's guilty plea. (DE#1:6).

3. Petitioner was denied his Fourteenth Amendment right to due process of law when the trial court failed to inform him as to the nature and elements of the charged offenses. (DE#1:9).

4. Petitioner was denied effective assistance of counsel under the Sixth Amendment when Attorney Weisman failed to inform him of several plea offers provided by the State. (DE#1:9).

5. Petitioner was denied effective assistance of counsel under the Sixth Amendment when Attorney Weisman failed to advise him of all the direct consequences of his plea, and provided misadvise as to the length of time petitioner would be sentenced. (DE#1:11).

6. Petitioner was denied effective assistance of counsel under the Sixth Amendment when Attorney Weisman failed to investigate relevant and exculpatory evidence. (DE#1:11).

7. Petitioner was denied effective assistance of counsel pursuant to the Sixth Amendment when Attorney Weisman advised petitioner to plead guilty while petitioner suffered from psychological, drug, and/or alcohol problems. (DE#1:17).

8. Petitioner was denied his Fourteenth Amendment right to due process of law as a direct result of Attorney Weisman's acts or omissions. (DE#1:18).

9. Petitioner was denied effective assistance of counsel pursuant to the Sixth Amendment when Attorney Millan failed to investigate or otherwise prepare for sentencing

and hearing on petitioner's motion to withdraw. (DE#1:21).

10. Petitioner was denied his Fourteenth Amendment right to due process of law as a result of numerous instances of prosecutorial misconduct. (DE#1:24).

In the March 8, 2013, reply to the respondent's response, (DE#51), petitioner raises the following claim for the first time:

11. Petitioner was denied his Fourteenth Amendment rights to due process, trial by jury, and all his corresponding criminal trial rights because his drug related convictions, pursuant to Sections 893.13(6)(a) and 893.135(1)(c)1, are void for failure to include a *mens rea* requirement. (DE#51:34).

## Procedural History

The pertinent procedural history of this case is as follows. On July 31, 2003, in case no. 03-19458, petitioner was charged by information with one count of kidnaping with a weapon and aggravated battery with a deadly weapon. (R2:15-18). Thereafter, on November 15, 2004, in case no. 04-32198, he was charged by information with trafficking in illegal drugs and possession of cocaine. (R2:115-118). Petitioner entered a guilty plea in both cases on February 8, 2006. (Transcript for February 8, 2006 hearing:39-72).

On June 16, 2006, in case no. 03-19458, petitioner was sentenced to 25 years in prison as to Count 1 and 15 years as to Count 2, with a 10-year minimum mandatory as to each count respectively, all to run concurrently with one another. (Transcript of June 16, 2006 hearing:176-177;R2:122-125). Then, with respect to case no. 04-32198, he was sentenced to 10 years in prison as to Count 1 with a 3-year minimum mandatory, and 5 years in prison as to Count 2, to run concurrently with one another. (Id.). Ultimately, the court ordered both cases to run consecutive to one

another for a total of 35 years with a minimum mandatory sentence of 13 years in prison. (Id.).

Prior to his sentencing hearing, petitioner, on May 18, 2006, filed a pro se motion to withdraw his guilty plea pursuant to Fla.R.Crim.P. 3.170(f) (DE#18,Ex.A), which was argued at the start of his sentencing proceedings on June 16, 2006, but was subsequently denied. (Transcript of June 16, 2006 hearing:1-48).

Petitioner then filed separate appeals with the Third District Court of Appeal for each trial court case, case nos. 3D06-1864 and 3D06-1866, wherein he argued the trial court erred in denying his pre-sentence motion to withdraw his guilty plea. (DE#18,Exs.B,C). Petitioner filed a motion to consolidate the district court cases (Id.,Ex.E), which was granted.[2] The district court, on April 23, 2008, entered an order, per curiam and without written opinion, affirming the trial court's denial of the motion to vacate. Flynn v. State, 980 So.2d 504 (Fla. 3d DCA 2008). Petitioner neither sought discretionary review before the Florida Supreme Court or the Supreme Court of the United States.

Petitioner returned to the state court, through counsel, filing his first Rule 3.850 motion for post-conviction relief on April 23, 2009, as to both criminal cases. (DE#19,R2:20-37).[3] An

---

[2]The Court takes judicial notice of information available at the database maintained by the Third District Court of Appeal,http://www.3dca.org/, in Flynn v. State, Case Nos. 3D06-1864 and 3D06-1866. See Fed.R.Evid. 201.

[3]In his petition, petitioner asserts that on June 9, 2008, he filed a Motion to Mitigate sentence which was subsequently denied by the trial court on June 26, 2008. (DE#1:2). He did not appeal the denial thereof. (Id.). Although no documents supporting his allegations have been provided by either petitioner or respondent, a review of the Miami-Dade County Clerk's website reflects that a Motion to Mitigate Sentence was docketed with the Clerk on June 13, 2008 and thereafter an order denying the motion was docketed on July 3, 2008. The Court takes judicial notice of information available at the database maintained by the Miami Dade County Clerk, http://www.miami-dadeclerk.com/, in State v. Flynn, Case Nos. F03-19458 & F04-32198. See Fed.R.Evid. 201.

amended motion was subsequently filed on July 13, 2009. (Id.,R2:51-69). Following the state's response (Id.,R2:80-94) and an evidentiary hearing on the matter (Transcript of September 4, 2009 hearing:1-84), the trial court entered an order denying the motion. (DE#19,R2:99). The petitioner appealed with the Third District Court of Appeal, case number 3D09-2946 (Id.,R2:100). Following the state's response and a reply thereto (DE#18,Exs.G,H), the district court, on March 23, 2011, per curiam and without written opinion, affirmed the trial court's denial. Flynn v. State, 57 So.3d 861 (Fla. 3d DCA 2011). The mandate issued on April 8, 2011. (Id.,Ex.K). Following the issuance of the mandate, petitioner's motion for rehearing was docketed and subsequently denied on May 3, 2011. (DE#18,Exs.I,J).

Petitioner returned to the state court and filed a pro se amended motion for post-conviction relief, prior to his first 3.850 motion becoming final on appeal, raising the same claims he asserted in his prior Rule 3.850 motion. At the latest, petitioner's second Rule 3.850 proceeding was initiated on April 28, 2011. (DE#26,Ex.A). Following the state's response,[4] the trial court, on August 5, 2011, denied the motion as time barred and moreover, noted that three of petitioner's claims could have been raised on direct appeal and that his claims of ineffective assistance of counsel were also successive. (Id.,Ex.B). Petitioner's motion for rehearing, was denied on December 8, 2011. (Id.). Petitioner filed an appeal with the Third District Court of Appeal, assigned case number 3D12-180.[5] The district court, on December 18, 2013, per curiam and without written opinion, affirmed

---

[4]The Court takes judicial notice of information available at the database maintained by the Miami Dade County Clerk, http://www.miami-dadeclerk.com/, in State v. Flynn, Case Nos. F03-19458 & F04-32198. See Fed.R.Evid. 201.

[5]The Court takes judicial notice of information available at the database maintained by the Third District Court of Appeal,http://www.3dca.org/, in Flynn v. State, Case No. 3D12-180. See Fed.R.Evid. 201.

the trial court's decision. <u>Flynn v. State</u>, 133 So.3d 939 (Fla. 3d DCA 2013).

Prior to the conclusion of his state court proceedings, petitioner came to this Court filing the instant petition for federal habeas corpus on July 26, 2011.[6] (DE#1).

On March 19, 2012, a Report was entered recommending that the movant's motion to vacate be dismissed without prejudice. (DE#28). Thereafter, through counsel, movant filed objections thereto. (DE#35). In pertinent part, movant asserted his convictions and sentences did not become final until 90 days after the Florida appellate court's April 23, 2008 affirmance, on July 22, 2008, when the time for seeking certiorari review in the United States Supreme Court expired. (<u>Id.</u>). Following review thereof, the District Court sustained petitioner's objections and determined petitioner's instant habeas corpus petition was timely filed with a total of 358 days of untolled time passed from when petitioner's judgment became final until he filed the instant habeas petition. (DE#36). The Court then referred the matter back to the Undersigned for consideration of whether a stay was warranted until petitioner's then pending state court appeal was resolved or, if a stay was inappropriate, whether petitioner should be given the option to delete his unexhausted claims and proceed with his exhausted claims, in lieu of dismissal of the entire petition without prejudice. (DE#36).

On October 15, 2012, a supplemental order to show cause was entered directing the respondent to address the merits of petitioner's claims raised in this collateral proceeding. (DE#37). Pursuant to this Court's order, the respondent filed a supplemental

---

[6]<u>See</u> <u>Adams v. U.S.</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

response, accompanied by a second appendix of exhibits. (DEs#42,41). Petitioner then filed a reply to the supplemental response, followed by respondent's objections to the supplemental claim raised for the first time in petitioner's reply. (DEs#51-53).

During the interim, petitioner filed a motion to stay, which was denied, followed by a renewed motion to stay. (Des#43,44,47). On June 18, 2013, the Undersigned issued a Report recommending granting petitioner's renewed motion to stay his proceedings. (DE#54). Therein, petitioner was directed to reinitiate his federal proceeding no later than seven days of receiving a final adjudication on the appeal of his second Rule 3.850 motion. (Id.). He was cautioned that if he were to wait until the seventh day to return to this Court to pursue federal habeas corpus relief, he ran the risk of running afoul the one-year limitations period. (Id.). Accordingly, it was further recommended the case be closed for administrative purposes until the time petitioner reinitiated his case. (Id.). The District Court, on July 26, 2013, entered an order adopting the Report, granted petitioner's motion to stay and administratively closed the case. (DE#55).

Following the conclusion of his state court proceedings, petitioner returned to this Court, through counsel, on March 11, 2014, and a filed a motion to lift the stay, which was granted the following day. (DEs#57,58). As such, the case was reopened, the stay was lifted and the matter was rereferred to the Undersigned on disposition of the petition. (Id.).

## Timeliness of this Federal Petition

As narrated above, in light of the District Court's determination that petitioner's federal habeas corpus petition was filed within one year of when his convictions became final, the

undersigned need not belabor the timeliness issue, as the petitioner is entitled to no relief.

### Exhaustion/Procedural Bar

The procedural defenses will be addressed below in conjunction with the discussion on the specific claims.[7]

### Standard of Review

This federal habeas petition is governed by 28 U.S.C. §2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Recognizing that "[s]tate courts are adequate forums for the vindication of federal rights . . . , AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. ____, _____, 134 S.Ct. 10, 15–16 (2013). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. ____, __ , 131 S.Ct. 770, 786–87 (2011). The "purpose of AEDPA is to ensure

_____

[7]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979). In Florida, claims of ineffective assistance of counsel are generally not reviewable on direct appeal, but are properly raised in a motion for post-conviction relief. See Kelley v. State, 486 So.2d 578, 585 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986).

that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." <u>Greene v. Fisher</u>, 565 U.S. ___, ___, 132 S. Ct. 38, 43 (2011) (quotation marks omitted).

The AEDPA permits federal courts to grant habeas relief only when the state court's adjudication: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>See</u> 28 U.S.C. §2254(d).

The phrase "clearly established Federal law" refers "to the holdings, as opposed to the *dicta*, of [the U.S. Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523 (2000). The phrase "contrary to" means that the state court decision "contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts." <u>Kimbrough v. Sec'y, Fla. Dep't of Corr's</u>, 565 F.3d 796, 799 (11th Cir. 2009). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the U.S. Supreme Court]." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quotation marks omitted).

The standard of §2254(d) is "difficult to meet . . . because it was meant to be." <u>Burt v. Titlow</u>, 571 U.S. ___, ___, 134 S.Ct. at 16.(quotation marks omitted). This "highly deferential standard" demands that "[t]he petitioner carries the burden of proof," <u>Cullen v. Pinholster</u>, 563 U.S. ___, ___, 131 S.Ct. 1388, 1398 (2011)

(quotation marks omitted), and "that state-court decisions be given the benefit of the doubt," <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S.Ct. 357, 360 (2002).

<u>Applicable Legal Principles</u>

*Guilty Plea Principles*

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he/she is waiving by entering such a plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). <u>See also</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 629 (2002); <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985); <u>Henderson v. Morgan</u>, 426 U.S. 637, 645 n. 13 (1976).

"A plea is voluntary in a constitutional sense if the defendant receives real notice of the charge against him and understands the nature of the constitutional protections he is waiving." <u>United States v. Frye</u>, 402 F.3d 1123, 1127 (11th Cir. 2005) (<u>citing</u>, <u>United States v. Brown</u>, 117 F.3d 471, 476 (11th Cir. 1997)). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. <u>Frye</u>, 402 F.3d at 1127, *quoting*, <u>United States v. Mosely</u>, 173 F.3d 1318, 1322 (11th Cir. 1999). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." <u>North Carolina v.</u>

<u>Alford</u>, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970);
<u>Boykin</u>, 395 U.S. at 242.

*Ineffective Assistance of Trial Counsel*

The Sixth Amendment affords a criminal defendant the right to
"the Assistance of Counsel for his defense." U.S. CONST. amend. VI.
To prevail on a claim of ineffective assistance of counsel, a
habeas petitioner must demonstrate both (1) that his counsel's
performance was deficient, and (2) a reasonable probability that
the deficient performance prejudiced the defense. <u>Strickland v.
Washington</u>, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). In assessing whether a particular counsel's performance was
constitutionally deficient, courts indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
assistance. <u>Id.</u> at 689.

More specific to this case, a criminal defendant is entitled
to the effective assistance of competent counsel before deciding
whether to plead guilty. <u>Padilla v. Kentucky</u>, 559 U.S. 356, 364-
65, 130 S.Ct. 1473, 1480-81, 176 L.Ed.2d 284 (2010). It is beyond
dispute that an attorney has a duty to advise a defendant who is
considering a guilty plea of the available options and possible
consequences. <u>See generally</u> <u>Brady v. United States</u>, 397 U.S. 742,
756 (1970). <u>See also</u> <u>Von Moltke v. Gillies</u>, 332 U.S. 708, 721, 68
S.Ct. 316, 322, 92 L.Ed. 309 (1948)("Prior to trial an accused is
entitled to rely upon his counsel to make an independent
examination of the facts, circumstances, pleadings and laws
involved and then to offer his informed opinion as to what plea
should be entered. Determining whether an accused is guilty or
innocent of the charges in a complex legal indictment is seldom a
simple and easy task for a layman . . . ."). The law requires
counsel to research the relevant law and facts and to make informed

11

decisions regarding the fruitfulness of various avenues. <u>United States v. Grammas</u>, 376 F.3d 433, 436 (5th Cir. 2004).

Thus, the <u>Strickland</u> two-part standard is applicable to ineffective-assistance-of-counsel claims arising out of a guilty plea. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). As indicated, a court must first determines whether counsel's performance fell below an objective standard of reasonableness, and then determines whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Padilla</u>, 130 S.Ct. at 1482. In the context of a guilty plea, the first prong of <u>Strickland</u> requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have gone to trial. <u>Hill</u>, 474 U.S. at 56-59, 106 S.Ct. at 370-71. <u>See generally</u> <u>Lafler v. Cooper</u>, ___ U.S. ___, 132 S.Ct. 1376, 1385 (2012); <u>Missouri v. Frye</u>, ___ U.S. ___, 132 S.Ct. 1399 (2012).[8] A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 104 S.Ct. at 2052.

If the petitioner cannot meet one of <u>Strickland's</u> prongs, the court does not need to address the other prong. <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1100 (11th Cir. 2007); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000). "Surmounting <u>Strickland's</u> high bar is never an easy task." <u>Richter</u>, 131 S.Ct. at

---

[8]The Supreme Court in <u>Frye</u> and <u>Lafler</u> clarified that the Sixth Amendment right to effective assistance of counsel under the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) extends to the negotiation and consideration of plea offers that lapse or are rejected. <u>See</u> <u>Frye</u>, 132 S.Ct. at 1404-08; <u>Lafler</u>, 132 S.Ct. at 1384.

788 (quoting Padilla, 559 U.S. at 371, 130 S.Ct. at 1485). A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by Strickland and §2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[9], 556 U.S., at ____, 129 S.Ct. at 1420." Richter, 131 S.Ct. at 788. The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933 (2007).

*Pre-Trial/Change of Plea Proceedings*

On February 8, 2006, petitioner appeared before the trial court for the start of trial proceedings. (Transcript for February 8, 2006 hearing:39-72). Prior to the start of voir dire, after defense counsel had informed the Court he had no intentions of calling any witness at trial other than possibly petitioner, petitioner was placed under oath, and the court inquired whether there was anyone at all that he would have wanted counsel to check into or list as a witness in his case, to which petitioner responded "[n]ot at this time your Honor." (Id.:41-43). Petitioner had provided counsel with all the information he had and as far as petitioner knew, counsel had investigated everything and there were no witness, other than himself. (Id.:43). With regards to plea offers, the state noted for the record that prior to sounding, there were negotiations regarding a state plea offer that was not accepted at the time, but revoked. (Id.). However, at the time of the colloquy, the court noted there were no plea offers, thus,

_____

[9]Knowles v. Mirzayance, 556 U.S. 111 (2009).

there was nothing for petitioner to consider, which petitioner indicated he understood. (Id.:44).

Following brief administrative matters, defense counsel indicated to the court that petitioner wanted to enter a guilty plea as to both cases and receive a pre-trial sentencing investigation report. (Transcript for February 8, 2006 hearing:49-50). The state then informed the court he did not want for there to be a "rule three" motion to withdraw his plea in the future and requested the court to ensure petitioner that his defense attorney could not make any promises relating to the length of sentence that may be imposed. (Id.:49). In response, the court noted numerous times for the record that at no time has it ever indicated to petitioner the sentence he would receive. (Id.). As a precautionary measure, the court addressed petitioner and stated that it was its understanding that neither the state nor defense counsel have agreed to any specific sentence. (Id.:50-51). The court went on to say that in addition to neither the state nor counsel agreeing to any specific sentence, the court has also not indicated in any way the length of sentence it would impose. (Id.:51). Moreover, the court reminded petitioner that it had not reviewed anything, its involvement in the case had been limited to medical records issue and that it was not the judge at the Arthur Hearing. (Id.). The court made clear, and petitioner understood, that it has in no way indicated to anyone what the sentence may be. (Id.).

After petitioner indicated he understood he was not pleading to a specific sentence, the state noted that if petitioner were to plead guilty to all of the charges, he faced life imprisonment. (Transcript for February 8, 2006 hearing:51-52). Specifically, the state explained petitioner faced a "maximum sentence of life imprisonment plus thirty-eight years consecutive to a life sentence with a ten year min man . . . ." (Id.:52). With respect to the

narcotics trafficking case, the state informed the court there was an additional three-year minimum mandatory sentence that could also be imposed consecutively to the sentence in the other case, which movant acknowledged he understood. (Id.:52-53).

While still under oath, petitioner acknowledged he had never been diagnosed with any sort of mental illness, nor had he ever taken any psychotropic medication that had been prescribed by a doctor. (Id.). Petitioner further acknowledged that his decision to plead guilty was not as a result of coercion or duress and that no one forced him in any way to change his plea from not guilty to guilty. (Id.:54). At this time, upon petitioner's request, the court allowed petitioner and his attorney to enter a conference room and discuss the change of plea. (Id.). Following his meeting with counsel, petitioner repeated his intentions of wanting to plead guilty to both cases as to all charges. (Id.:55). Once again, the court informed petitioner of the maximum penalties he faced, which he understood and indicated there were no promises whatsoever as to the possible sentence made to him. (Id.). In fact, petitioner stated "I understand the worse case scenario. I am pretty well aware of that." (Id.:56).

The court wanting to understand petitioner's decision to plead guilty, asked him why he felt doing so was the better decision, to which he responded "I want to get it out of the way. It's been a difficult time. I want to take a plea to what happened." (Id.:56). Then, during a brief exchange between the court and the state regarding the sentence petitioner faced, petitioner interjected stating "I understand that your Honor, I do. I just want to get this over with." (Id.:56-57).

The court went on to ask and petitioner acknowledged he was satisfied with counsel, who had done everything petitioner has

15

requested of him and that counsel had been effective. (Transcript for February 8, 2006 hearing:58). Movant went on to say "[i]t's a serious issue, I want to take responsibility for any actions and plea guilty. That's it. Let's just take it with the Court." (Id.:58-59).

The court then proceeded to conduct a plea colloquy, wherein petitioner once again denied having suffered any mental illnesses, indicated he was not under the influence of any drugs or alcohol, provided answers regarding his education level, and understood the charges to which he was pleading guilty, along with the maximum penalties he faced. (Transcript for February 8, 2006 hearing:60-62).

Moreover, the petitioner acknowledged the constitutional rights he waived as a result of pleading guilty, including his right to trial, his right to remain silent, his right to confrontation and cross-examination of state witnesses, the right to the court's compulsory process, and his right to appeal. (Transcript for February 8, 2006 hearing:63-64). Petitioner further indicated he had sufficient time to consult with his attorney regarding his case and his change of plea. (Id.:64). Once again, petitioner indicated he was satisfied with counsel's representations, including that counsel had done everything petitioner had requested of him. (Id.). No one, including his attorney, forced or threatened petitioner to plead guilty to the charges. (Id.).

Following the foregoing colloquy, petitioner and his client had another off the record discussion. (Transcript for February 8, 2006 hearing:65-66). Upon conclusion thereof, the trial court again informed petitioner that there were no promises as to his potential sentence, which petitioner understood. (Id.:66-67). The state

interrupted, once again advising the court of the potential maximum sentence, increasing petitioner's maximum exposure to life imprisonment with fifty years and a thirteen year minimum mandatory sentence, which petitioner indicated he understood. (Id.:67-68). Next, defense counsel stipulated to a factual basis for the plea. (Id.:68). The court then found, based upon the stipulation of the parties and review of the arrest affidavits and the information as to each case, there existed a factual basis for the plea. (Id.:70). The court also noted petitioner understood the nature and consequences of the plea and that his plea was entered into freely, voluntarily after having the advice of competent counsel. (Id.). Finally, the court found there had been no duress or any sort of coercion with anyone and accepted petitioner's guilty plea on all of the charges as to both cases. (Id.:70-71).

## Discussion of Claims

In **claim one**, petitioner asserts he was denied his Fourteenth Amendment right to due process of law when the state trial court failed to fully advise him of the direct consequences of his plea. (DE#1:2). Specifically, petitioner contends the trial court failed to advise him of the mandatory $50,000 fine and it failed to accurately advise him of the maximum possible sentence exposure he faced. (DE#1:3). Had petitioner been fully and properly advised of all direct consequences of pleading guilty, he would not have entered the plea, but rather would have proceeded to trial. (Id.:4).

*a. Mandatory $50,000.00 Fine*

On appeal of the denial of his Rule 3.850 motion, when petitioner raised this claim for the first time, in its response, much like now, the state argued that the matter was procedurally

17

barred as one which could have been presented in a motion to withdraw plea and petitioner's failure to do so did not preserve the issue for direct appeal, citing to Robinson v. State, 373 So.2d 898, 902-03 (Fla. 1979), Fla.R.App.P. 9.140(b)(2)(B)(i). (DE#18,Ex.G:6-7). Likewise, petitioner's claim is not cognizable in a motion filed under Fla.R.Crim.P. 3.850 based on grounds which could or should have been raised on direct appeal of the judgment and sentence. (Id.:7). Thus the state argued, this claim for relief should be summarily denied on grounds of procedural bar. (Id.). The Third District Court of Appeal thereafter per curiam and without a written opinion, affirmed the trial court's denial. Flynn v. State, 57 So.3d 861 (Fla. 3d DCA 2011).

In reply to the response, petitioner, through counsel, argues this claim is not procedurally defaulted because it was clearly set forth in petitioner's initial Rule 3.850 motion and the amendment thereto. (DE#51:9). He further argues, because the state, in its response, conceded that an evidentiary hearing was necessary to resolve the claim, without raising a procedural default/bar argument, waived any such defense. (Id.:9-10).

Contrary to petitioner's assertions, a review of his initial Rule 3.850 motion and the amendment thereto does not "clearly" show that petitioner raised the instant claim as one of trial court error. (DE#19,R2:20-37,51-69; see also DE#26,Ex.A). Instead, it appears that the subject claim was raised as one of ineffective assistance of counsel, and was treated as such by the state in its response, and thereafter by the court and both parties at the subsequent evidentiary hearing. (See DE#19,R2:82;DE#19,TS:5-6,22-23).

Petitioner cannot not now assert that the state is precluded from arguing the claim is procedurally barred, when in the amended

18

Rule 3.850 motion, which was prepared by an attorney, the claim was raised as one of ineffective assistance of counsel. In preparing the Rule 3 motion, counsel for the petitioner was prudent in presenting the claim as one pursuant to ineffective assistance of counsel instead of a claim of trial court error. As a general matter "the main question on direct appeal is whether the trial court erred, [and] the main question in a Strickland claim is whether trial counsel was ineffective." Bruno v. State, 807 So. 2d 55, 63 (Fla. 2001); accord Franqui v. State, 59 So. 3d 82, 96 (Fla. 2011). Both substantive and ineffective assistance claims may arise out of the same underlying facts but the claims themselves are usually distinct. Id. A claim of trial court error may generally be raised on direct appeal but not in a post-conviction motion, and a claim of counsel's ineffectiveness may generally be raised in a post-conviction motion but not on direct appeal. Id. However, Florida courts have also held a defendant may not "counter the procedural bar" on issues that could have been raised on appeal by "couch[ing] his claim . . . in terms of ineffective assistance of counsel in failing to preserve or raise those claims." Cherry v. State, 659 So. 1069, 1072 (Fla. 1995); Medina v. State, 573 So. 2d 293 (Fla. 1990).

Not until the appeal from the denial thereof, did petitioner clearly raise the claim for the first time as one of trial court error, at which time the state responded accurately by arguing it was barred from review. Contrary to petitioner's argument against application of a procedural bar, it is firmly established and regularly followed in Florida that a claim is procedurally barred if it is raised for the first time in a post-conviction appeal. Connor v. State, 979 So. 2d 852, 866 (Fla. 2007); Shere v. State, 742 So. 2d 215, 218 n.7 (1999); Doyle v. State, 526 So. 2d 909, 911 (Fla. 1988).

To overcome a procedural bar, a petitioner must demonstrate objective cause for his failure to properly raise the claim in the state forum and actual prejudice resulting from the error complained of.[10] See United States v. Frady, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Here, petitioner has not done so. Nor has he established that a fundamental miscarriage of justice will result from application of the bar. To make such a showing, the petitioner must assert and demonstrate actual innocence. See House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 2077 (2006); Dretke v. Haley, 541 U.S. 386, 124 S.Ct. 1847 (2004). The actual innocence exception to the unreviewability of procedurally defaulted claims is applied only in the rarest of cases; see Dretke, 541 U.S. at 392-93, 124 S.Ct. at 1852, and petitioner has failed to meet the high standard.[11] See Bousley v. United States, 523 U.S. 614 (1998), quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). Consequently, this claim is barred from consideration in this federal proceeding.

*b. Maximum Penalties*

---

[10]To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate that there is at least a reasonable probability that the outcome of the proceeding would have been different. See Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

[11]The petitioner must support the actual innocence claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995)). The Supreme Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. Id. See also High v. Head, 209 F.3d 1257 (11th Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039 (8th Cir. 2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2d Cir. 2000)(citing Schlup v. Delo, 513 U.S. 298, 299, (1995); Jones v. United States,153 F.3d 1305 (11th Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him).

In addition to the foregoing, petitioner also argues the trial court erred when it failed to properly inform him of the mandatory minimum and possible maximum penalties he faced as a direct consequence of his guilty plea. (DE#1:4). Because he heard so many conflicting possibilities, he claims he had "absolutely no idea what the actual direct consequences of his plea would be." (Id.). Petitioner goes on to assert that had the court properly advised him of the actual consequences of his guilty plea, instead of its "best guess," he would not have entered a guilty plea, but rather he would have proceeded to trial. (Id.:5-6). This claim is belied by the record.

As may be recalled on, February 8, 2006, court proceedings commenced for the start of trial. (Transcript for February 8, 2006 hearing:39-72). Following brief administrative matters, defense counsel indicated to the court that petitioner wanted to enter a guilty plea as to both cases. (Id.:49-50). The court then engaged in some preliminary questioning regarding petitioner's intentions, competency and understanding of his decision to plead guilty, which involved some initial discussions of the sentence exposure petitioner may face. (Id.:49-60).

Thereafter, at the start of the plea colloquy, petitioner was informed that in relation to case no. F0319458, his kidnaping with a weapon charge carried a maximum term of life imprisonment and the aggravated battery with a deadly weapon charge, a second degree felony, was punishable by a maximum of fifteen years in prison, with both counts having a ten-year minimum mandatory term. (Transcript for February 8, 2006 hearing:61). As to case number F0432198, petitioner was informed that the charge of illegal drug trafficking was a first degree felony punishable by a maximum of thirty years in prison and his possession of cocaine charge, a third degree felony, was punishable by a maximum of five years in

21

prison, with a three year minimum mandatory as to the trafficking charge. (<u>Id.</u>:61-62). Petitioner understood the foregoing penalties. (<u>Id.</u>).

After some brief calculating as to the sentence exposure petitioner faced as to all the charges, the trial court informed him, and he indicated he understood that he faced a life sentence plus 48 years as to both cases if the terms of imprisonment were imposed consecutively. (Transcript for February 8, 2006 hearing:62).

Following further questioning, the state interrupted the court proceedings and stated that with respect to the drug trafficking charge, it believed it had indicated it carried a maximum of 15 years in prison; however, because it's a first degree offense punishable by up to thirty years. (Transcript for February 8, 2006 hearing:67-68). Accordingly, petitioner's total exposure was life with fifty years with a thirteen year minimum mandatory. (<u>Id.</u>:68). The court then noted, "[w]e started with life up to thirty eight, life plus forty eight, now it's life plus fifty." (<u>Id.</u>). Although the court went on to admit that it had not actually done the calculation, the court nonetheless asked petitioner whether he understood he faced life in prison, which petitioner indicated he did. (<u>Id.</u>).

Although the state interrupted the court and informed it that the drug trafficking charge was punishable up to thirty years in prison believing it had previously indicated it was an offense punishable up to fifteen years, a review of the record clearly demonstrates that petitioner was previously informed correctly that this specific offense carried a thirty-year maximum sentence. (<u>See id.</u>:61-62). As the state trial court noted, at all relevant times, petitioner understood he faced a maximum penalty of life in prison.

22

Likewise, petitioner was properly informed from the start of the change of plea colloquy that of the maximum penalties he faced for each individual charge. Rather, the only changes made to petitioner's sentence exposure was the <u>actual sum</u> of the maximum penalties he faced in addition to a life sentence, while the individual maximum penalties for each offense remained the same.

Nonetheless, despite petitioner being misadvised of the summation of the maximum penalties he faced, he was ultimately informed of the correct sentence exposure, which he indicated to the court, under oath, that he understood. Petitioner's sworn statements made in connection with the entry of the plea carry a strong presumption of truthfulness and pose a formidable barrier in these subsequent collateral proceedings. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977); <u>Kelley v. Alabama</u>, 636 F.2d 1082, 1084 (5th Cir. Unit B. 1981). The rejection by the state courts of petitioner's challenges was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must be denied pursuant to 28 U.S.C. §2254(d). <u>Williams</u>, <u>supra</u>.

In **claim two**, petitioner asserts he was denied his Fourteenth Amendment right to due process of law when the state trial court failed to ensure a factual basis existed to support petitioner's guilty pleas as to both his cases. (DE#1:6).

As to this claim, that his pleas of guilty were unlawful in that they were not supported by a sufficient factual basis, the respondent correctly asserts that this allegation does not state a federal constitutional claim. The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary. <u>North Carolina v. Alford</u>, 400 U.S. 25, 37 (1970).

23

Only when a defendant proclaims his innocence while pleading guilty have federal courts required a judicial finding of some factual basis for the plea as an essential part of the constitutionally required finding that the plea was voluntary. North Carolina v. Alford, 400 U.S. at 38 n. 10; Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) and cases cited therein; Willett v. Georgia, 608 F.2d 538, 540 (5th Cir.1979). Even in those cases, the purpose of placing the facts on the record is not to establish guilt as a basis for a judgment of conviction. Rather it is to aid in the constitutionally required determination that the defendant entered the plea intelligently and voluntarily. Willett v. Georgia, 608 F.2d at 540. See North Carolina v. Alford, 400 U.S. at 37-38.

Since there is no constitutional requirement that a state court establish a factual basis for a guilty plea before entering judgment on the plea, petitioner's guilty pleas to the crime charged were sufficient to sustain a conviction of the crime. Edwards v. Garrison, 529 F.2d 1374, 1376 (4th Cir. 1975), cert. denied, 424 U.S. 950 (1976). Even if petitioner is now asserting that he is actually innocent of the subject offenses to which he entered a plea of guilty, he has made no such showing of actual innocence in this habeas corpus proceeding. See Bousley v. United States, 523 U.S. 614, 623 (1998); Schlup v. Delo, 513 U.S. 298, 327-328 (1995). See also High v. Head, 209 F.3d 1257 (11th Cir. 2000).  Thus, the trial court was not required pursuant to federal law to elicit a factual basis before accepting petitioner's plea.

Notwithstanding, a review of the plea colloquy reveals the parties stipulated to a factual basis for the pleas. (Transcript of February 8, 2006 hearing:68).  For the foregoing reasons, relief must be denied pursuant to 28 U.S.C. §2254(d). Williams, supra.

In **claim four**, petitioner asserts he was denied effective

24

assistance of counsel under the Sixth Amendment when Attorney Weisman failed to inform him of several plea offers provided by the State. (DE#1:9). Had he been informed of the state's plea offers, petitioner asserts he would not have entered into an open plea, but rather, would have accepted any of the state's plea offers. (Id.).

After further review of the state court proceedings, the Undersigned agrees with the respondent that this claim is procedurally defaulted.

In Florida, exhaustion of claims raised in a Rule 3.850 motion includes an appeal from the denial of the motion. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979)(holding that Florida state remedies are exhausted after appeal to the district court of appeal from denial of a collateral attack upon a conviction). Generally, in Florida, any argument that is presented below but not raised in an appellant's initial brief is deemed abandoned. See N.W. v. Dep't of Children and Families, 865 So.2d 625 (Fla. 4th DCA 2004). See also Duest v. Dugger, 555 So.2d 849 (Fla. 1990)("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."). Although petitioner prosecuted an appeal from the denial of his Rule 3.850 motion, he did not raise the instant claim. Therefore, petitioner waived appellate review of this claim, and thus did not properly exhaust the claim in the state courts.

Contrary to petitioner's assertions, the foregoing rule now applies regardless of whether the trial court in the post-conviction proceeding summarily denied the claims or whether the petitioner received an evidentiary hearing on any post-conviction claim. In order to obtain review, a petitioner must present

argument on all issues for which he seeks appellate review in his initial brief, regardless of whether the claim was summarily denied or litigated at the evidentiary hearing. See <u>Prince v. State</u>, 40 So.3d 11 (Fla. 4th DCA 2010); <u>Hammond v. State</u>, 34 So.3d 58 (Fla. 4th DCA 2010)(claim for which appellant did not present argument or for which he provided only conclusory argument was insufficiently presented for appellate review, regardless of whether claim was among those claims litigated at evidentiary hearing or among those claims summarily denied by the court); <u>Williams v. State</u>, 24 So.3d 1252 (Fla. 1st DCA 2009)(where appellant received evidentiary hearing on some of his post-conviction claims and others were summarily denied, appellate court would review only those summarily denied claims which movant argued in appellate brief). <u>See also</u> <u>Walton v. State</u>, 58 So.3d 887, 888 (Fla. 2d DCA 2011)(where all of appellant's post-conviction claims were summarily denied, but appellant chose to file initial brief on appeal (even though not required to do so under Fla.R.App.P. 9.141(b)(2)), appellant abandoned any issues not addressed in initial brief); <u>Ward v.</u> <u>State</u>, 19 So.3d 1060, 1061 (Fla. 5th DCA 2009)(en banc)(same); Watson v. State, 975 So.2d 572 (Fla. 1st DCA 2008)(same); <u>Austin v.</u> <u>State</u>, 968 So.2d 1049 (Fla. 5th DCA 2007)(same).

Petitioner's failure to assert on post-conviction appeal the claim presented herein results in the default of this ground. Because petitioner has failed to proffer any specific facts to show an exception of the procedural default, this claim is procedurally barred from review.

Petitioner's argument that the Rule 3.850 evidentiary hearing was "tantamount" to no hearing at all and the trial court's denial must be treated as a summary denial, thus petitioner was not obliged to file an appellate brief, is highly misplaced.

In <u>Sumner</u>, the United States Supreme Court stated that a habeas petitioner had received a "hearing" within the meaning of § 2254(d) when he was given an opportunity to be heard on the factual issue in question, when both the petitioner and the state were formally before the court, and when the court had resolved the factual issue in writing. <u>Toulson v. Beyer</u>, 827 F.Supp, 307, 313 (D.N.J., 1993); *citing* <u>Sumner v. Mata</u>, 449 U.S. 539, 546-47, 546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981). In this case, petitioner and the state were before the court, they both had an opportunity to be heard on the factual issues before the court, and the court resolved the issues in writing. <u>See</u> <u>Toulson</u>, 827 F.Supp. at 313.

Although petitioner is correct to the extent that the state trial court conducting the Rule 3.850 evidentiary hearing terminated the hearing during petitioner's testimony, it only did so after having heard testimony from the state witnesses and after hearing 12 pages of testimony from the petitioner. (<u>See</u> Transcript of September 4, 2009 hearing). During petitioner's direct examination, the court began to question petitioner wherein the following exchange occurred:

> THE COURT: Why did you take the plea?
>
> MR. FLYNN: I trusted Mr. Wiseman so much. He promised that I would get below 10 years. I thought that would be reasonable.
>
> THE COURT: He promised, and talked about it, and said you would get ten years, and here is ASA could I ask the court specifically specified do you understand he is facing totality sentence of life in prison, and the judge is basically telling you the same thing, but you think that they have talked.
>
> MR. FLYNN: He was so [adamant] that I'd get ten years.
>
> THE COURT: In other words[,] you felt the court was lying to you, and the state attorney was lying to you at the hearing on the plea.

MR. FLYNN: Either that or Mr. Wiseman was. I believe Mr. Wiseman was lying to me.

THE COURT: So[,] why did you take the plea?

[DEFENSE COUNSEL]: The testimony he just said based on his attorney not being prepared for trial.

THE COURT: Of course when at that point when the judge asked let's see, are you satisfied he said yes Your Honor, I'm satisfied with my attorney. The judge said ha[s] he done everything you asked him to do he answered yes your Honor. You feel he's been effective he answered yes your Honor. Why didn't you tell the judge this guy says ya'll have reached an agreement, and your telling me I'm facing life in prison.

MR. FLYNN: Your Honor he told me to go with the judge. Don't disrupt the pleading or else I would have to go to trial.

THE COURT: So basically the court was lying to you, and the state was lying to you, but you took the plea because you thought your attorney was lying to you.

MR. FLYNN: I didn't think The Court or Mr. Walker was lying.

THE COURT: Why did you take [the] plea when you were looking at life, and why did you tell the judge you were satisfied when he hasn't taken any depo's, and he wasn't ready for trial. Even though in the colloquy itself when asked are there any witnesses you want to call you answered not at this time.

[DEFENSE COUNSEL]: Why did you tell the court - - did you have any witnesses?

MR. FLYNN: I had witnesses. I gave to Mr. Wiseman.

[DEFENSE COUNSEL]: How many?

MR. FLYNN: Seven witnesses.

[DEFENSE COUNSEL]: One of the seven witnesses was eyewitnesses that was in the home the date of the alleged accident.

THE COURT: I don't know why I need to go beyond the

28

colloquy on this thing. Motion is denied. Thank you all.

(Transcript of September 4, 2009 hearing:81-83). The court's decision to conclude the evidentiary hearing after having heard petitioner's testimony up to that point, is clearly based upon its determination that petitioner's testimony, questionable on many accounts in contradiction to his sworn testimony during the change of plea hearing, was disingenuous and untrustworthy. Accordingly, the state trial court determined it was not going to spend any more time on the matter. It had heard sufficient testimony and did not see any reason to entertain any further testimony because there was a very serious credibility issue.

Petitioner's attempts to give the impression that the state trial court denied him an adequate evidentiary hearing fails as it was due to his own behavior that resulted in the court concluding the evidentiary hearing at the time in which it did. Notwithstanding, as discussed at length supra, the law is well settled that regardless whether the trial court in the post-conviction proceedings summarily denied the claims or held an evidentiary hearing on any post-conviction claim, petitioner is nonetheless required to present argument on **all issues** for which he seeks appellate review in his initial brief.

Moreover, despite petitioner's subsequent attempt to exhaust this claim in the state courts, the claim remains unexhausted and procedurally barred. As may be recalled, petitioner filed a pro se amended motion for post-conviction relief on April 28, 2011 (DE#26,Ex.A), which was denied by the trial court on August 5, 2011. (Id.,Ex.B). Specifically, the state trial court found this claim of ineffective assistance of counsel to be successive. (Id.). Following the denial of petitioner's motion for rehearing (id.), an appeal was filed with the Third District Court of Appeal, assigned

29

case number 3D12-180. On December 18, 2013, the district court, <u>per curiam</u> and without written opinion, affirmed the trial court's decision. <u>Flynn v. State</u>, 133 So.3d 939 (Fla. 3d DCA 2013).

The petitioner's unexhausted claim is now incapable of exhaustion at the state level and would be procedurally barred under Florida law. Due to petitioner's failure to take a proper appeal from the denial of post-conviction relief, there is no longer a remedy available in state court. Accordingly, the claim is considered procedurally defaulted. Petitioner has not alleged, let alone demonstrated, cause and prejudice for the default. He has also not shown that he is entitled to review under the fundamental miscarriage of justice exception. Petitioner has provided no evidence whatever of actual innocence, let alone new and reliable evidence of his innocence. <u>Schlup v. Delo</u>, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Consequently, this claim is procedurally barred from federal review.

In **claim five**, petitioner asserts he was denied effective assistance of counsel under the Sixth Amendment when Attorney Weisman failed to advise him of all the direct consequences of his plea, and provided misadvise as to the length of time petitioner would be sentenced. (DE#1:11).

Specifically, petitioner faults counsel for failing to inform him that by pleading guilty to trafficking cocaine, he was subjected to a mandatory $50,000 fine, a direct consequence of his guilty plea. (DE#1:11). Moreover, he faults counsel for misadvising him that by pleading openly to the court, it would be lenient in sentencing and thus, could expect to receive concurrent sentences as to both cases. (<u>Id.</u>). Had petitioner understood he could receive a $50,000 mandatory fine and a sentence in excess of 10 years, he would not have pleaded guilty, but rather would have insisted on

proceeding to trial. (Id.).

a. Mandatory Fine

Petitioner's contention that counsel was ineffective for failing to inform him that by pleading guilty to the trafficking heroin offense he was subjected to a mandatory $50,000.00 fine; a direct consequence of entering a guilty plea, is without merit.

In order to succeed on his ineffective assistance of counsel claim, petitioner must show not only that his counsel's performance fell below an objective standard of reasonableness, but that he was prejudiced by his counsel's incompetence. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Strickland, 466 U.S. at 689. To show prejudice, there must be a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. Id.; Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (two-part Strickland test applies to ineffective-assistance claims arising out of the plea process). Following a conviction by guilty plea, this means a "reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Even if we assume without deciding that counsel was deficient as alleged, petitioner has nonetheless failed to show he suffered any prejudice as a result therefrom. The record before this Court shows petitioner adamantly persisted on numerous occasions on entering a guilty plea in both of his cases. (February 8, 2006 hearing:49,55,56,57,58-59,64,65,66,67). Likewise, defense counsel's

31

testimony during the evidentiary with respect to this issue revealed that the fine was not petitioner's concern. (September 4, 2009 hearing:6). Moreover, in light of the foregoing, as well as petitioner's clear desire to plead guilty to an open plea which subjected him to life in prison plus 50 years, this Court finds petitioner's protestations that but for counsel's alleged error of failing to inform him of a mandatory $50,000.00 fine, he would have insisted on proceeding to trial incredible.

The rejection by the state courts of petitioner's challenges was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must be denied pursuant to 28 U.S.C. §2254(d). Williams, supra.

*b. Sentence Exposure*

As may be recalled, petitioner alleges counsel informed him that by pleading guilty, he could expect to receive concurrent sentences on both of the cases and the court would not impose a sentence in excess of ten years.

As to his sentence exposure, the identical claim was raised in petitioner's amended Rule 3.850 motion. In response, the state argued:

> At the hearing held on June 16, 2006, the defendant testified as follows []:
>
> 'Q:(by atty Millan): Had he discussed any sentencing options []with you with regards to probation, house arrest, jail, prison, how much, minimum mandatories? A: No' (citation omitted)
>
> The defendant then goes on to state (citation omitted) 'They were trying to convince me that I may get a lesser

> sentence by pleading guilty rather than going to trial
> and definitely losing.'
>
> Clearly, the defendant is not being truthful, either in
> his testimony to the Court on June 16, 2006 or in his
> motion pending before this Court, since he now says that
> he was promised 10 years, yet testified that he was not.
>
> Moreover, what counsel suggested 'may happen', to use the
> defendant's word, is exactly what did happen, because the
> defendant received a lesser sentence than the maximum
> allowable by law.
>
> The State's position is that the defendant's own
> testimony, and lack of credibility, is enough to refute
> this ground. However, the Court may wish to inquire of
> trial counsel regarding the conversation between the
> defendant and himself.

(DE#19,R2:91-92). At the evidentiary hearing, during defense
attorney Wiseman's direct testimony, he testified having explained
to petitioner he had a 99.9 percent chance that his guilty pleas as
to both cases would run concurrent to one another. (Transcript of
Evidentiary Hearing:14). However, he indicated telling his client
there was no guarantee, but that a concurrent sentence could be
expected based on his experience as a trial attorney. (Id.).
Counsel further indicated that at no time did he promise petitioner
that the sentencing judge was going to impose a specific sentence.
(Id.). Following additional questioning on an unrelated matter,
counsel's direct testimony once again revealed at no time during
any of his conversations with petitioner did he inform petitioner
he would only be sentenced to ten years in prison. (Id.:19).
Counsel went to explain that although he thought petitioner would
be sentenced between 8 and 10 years, he did not indicate to
petitioner he would receive such a sentence. (Id.:19-20). Moreover,
petitioner was well aware he faced the statutory maximums.
(Id.:20). Counsel further affirmed that petitioner's statements
made during the plea colloquy that he was not promised anything by
either his attorney or the court was a truthful statement. (Id.).

Although the court denied the amended Rule 3.850 motion in open court, it nonetheless subsequently issued an order reflecting the denial thereof. (Id.:99).

Petitioner's claims that counsel was ineffective for misadvising him that: 1) he could reasonably expect to receive concurrent sentences on both cases and 2) the court would not impose a sentence in excess of ten years, are without merit.

The record reveals petitioner entered open pleas of guilty to the court. Prior to the plea colloquy, movant acknowledged, under oath, that neither the State nor counsel had agreed to any specific sentence. (February 8, 2006 hearing:50-51). Likewise, movant understood that the court in no way indicated it would impose a specific sentence. (Id.:51). In explaining the sentence exposure petitioner faced, the following exchanged occurred:

> [STATE]: I know Mr. Wiseman said and he's certainly approached me and made comments about concurrent versus consecutive time but at this point there is no promise of anything so he would be looking at the full range of sentence on each one of the cases with no promises . . . .
>
> If he has some misunderstanding that is entitled to some type of concurrent time if he pleaded guilty as opposed to going to trial separately, I think he should be made aware that's not the case. He's looking at a maximum sentence of life imprisonment, plus thirty eight years consecutive to a life sentence with a ten year min man on this case. Three years min man on the narcotics trafficking case.
>
> THE COURT: Which can also be consecutive.
>
> MR. WEISMAN: What's that?
>
> [STATE]: Exactly, the ten and the three.
>
> MR. WEISMAN: He - - we understand.

[STATE]: He has to say it himself.

THE COURT: Mr. Flynn you heard that. Do you understand that?

THE DEFENDANT: Yes. I understand that.

* * * * *

[STATE]: I would ask the Court to make sure he understands that no promises have been [made] with regards to the sentence and concurrent versus consecutive and that he understand that. That's it.

THE COURT: We have asked him that at least three times.

THE DEFENDANT: I understand that your Honor, I do. I just want to get this over with

* * * * *

THE COURT: In case number F0319458 by doing that your pleading guilty to one count of kidnapping with a weapon which is a?

[STATE]: Firearm.

THE COURT: Says firearm.

[STATE]: That's allegedly - -

THE COURT: Okay. Firearm, which is a life felony.

THE DEFENDANT: Yes, your Honor.

THE COURT: Punishable, maximum is life. You're also pleading guilty to one count of Battery, aggravated with a[] deadly weapon, a second degree felony, punishable by a maximum of fifteen years . . . .

[STATE]: A ten year minimum as to each count.

THE COURT: As to each count. So you understand the charges you're pleading guilty to in this case? Do you understand the maximum penalty you could face? Is that correct.

THE DEFENDANT: Yes, your Honor.

THE COURT: And in case F0432198, by your change of plea, you're pleading guilty to one count of Illegal Drug Trafficking which is a First Degree felony punishable by a maximum of thirty years and one count of Possession of Cocaine which is a third degree felony punishable by a maximum of five years.

THE DEFENDANT: Yes, your Honor.

THE COURT: And there [is] a three year minimum mandatory as to Count One, so you understand that here you're looking at a maximum of thirty five years.

[STATE]: I'll double check as to that count on Heroin is a First Degree or Second.

THE COURT: It says first - -

[STATE]: I don't have a copy of the Information.

[DEFENSE COUNSEL]: It's thirty.

[STATE]: That changes the maximum exposure to a total of forty eight years. Life with forty eight as opposed to life with thirty eight.

THE COURT: So you understand the charges your pleading guilty to in both case[s].

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand the maximum penalty you could face as to both cases, if they're to run consecutive? Life plus forty eight years?

THE DEFENDANT: Yes, your Honor.

* * * * *

THE COURT: You had a chance to speak to your attorney at least thirty minutes since the last time we took a break. I again, I just need to make sure that you don't feel that anyone has promised you anything with regards to any type of specific treatment or any sort of leniency with regards to the sentencing either on behalf of the state or on behalf of the Court. Do you understand that?

THE DEFENDANT: Yes. I understand that totally.

* * * * *

[STATE]: With regard to the actual exposure on the arm -
- on the trafficking Heroin I believe I said fifteen
years. The Clerk pointed out it's a First degree. The
exposure is thirty years. That[] makes his maximum
exposure all total[]ing life with fifty years with a
thirteen years min man.

I want Mr. Flynn to be aware of that and see if that
changes his opinion as to whether or not he wants to
plead.

THE COURT: We started with life up to thirty eight, life
plus forty eight, now it's life plus fifty.

[STATE]: Right.

THE COURT: I have not actually worked it up myself but
you understand it's life?

THE DEFENDANT: I understand what it means.

THE COURT: With a minimum mandatory as well.

[STATE]: Same mini[m]um mandatories.

(Id.:52-53,56-57,61-62,66-67,67-68). Evident from the foregoing,
the trial court explained to petitioner that his sentence could run
consecutive to one another, along with the maximum penalties he
faced, which petitioner indicated he understood.

   Thus, even if this Court assumes trial counsel misadvised
petitioner that he could reasonably expect to receive concurrent
sentences on both of the cases or that he would not be sentenced to
more than ten years in prison, the trial court cured this defect in
the plea colloquy by clearly and correctly informing petitioner
that his sentences could run consecutive to one another and further
assuring no promises regarding the sentence he received were made
and by correctly informing him the maximum penalties he faced.
Therefore, counsel's alleged deficiency would not establish

prejudice to petitioner. See United States v. Wilson, 245 Fed.Appx. 10 (11th Cir. 2007)(finding that defense counsel's deficiency would not establish prejudice if the court cured the deficiency during the plea colloquy).

Thus, the state court's rejection of the identical claim raised in this federal proceeding was factually reasonable, as supported by the record, and in accordance with applicable federal principles. Consequently, the state court's result should not be disturbed. 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

In **claim six**, petitioner asserts he was denied effective assistance of counsel under the Sixth Amendment when Attorney Weisman failed to investigate relevant and exculpatory evidence. (DE#1:11-17).

Specifically, petitioner faults counsel for failing to: interview and/or subpoena numerous witnesses; investigate whether the weapon used in the offenses and/or any of the weapons seized by law enforcement were operable; investigate whether the weapons seized as evidence included the weapon identified by the victim; investigate the substances seized in relation to the drug trafficking charge; investigate the "source code" data software used by labs to operate drug testing instruments; independently test the substances; and investigate the knowledge and control requirements of constructive possession of drugs.

First, petitioner's claim that counsel was ineffective for failing to interview and/or subpoena numerous exculpatory witnesses, is belied by the record.

As previously discussed, on February 8, 2006, petitioner

38

appeared before the trial court for the start of trial proceedings. (Transcript for February 8, 2006 hearing:39-72). Prior to the start of voir dire, defense counsel informed the court he had no intentions of calling any witness at trial other than possibly petitioner. (Id.:41). The court, wanting to inquire from petitioner himself, placed him under oath, and asked him whether there was anyone at all that he would have wanted counsel to check into or list as a witness in his case, to which petitioner responded "[n]ot at this time your Honor." (Id.:41-43). According to petitioner, he had provided counsel with all the information he had as far as he knew, counsel had investigated everything and there were no witness, other than himself. (Id.:43). As previously noted, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge, 431 U.S. at 73-74. Petitioner's allegation that counsel was ineffective for failing to interviewa and/or subpoena the named witnesses is belied by the record. He stated to the court that he did not want counsel to call any defense witnesses. There is nothing in his answer which indicates the court erred in accepting his representations because they were not freely and voluntarily made.

Second, petitioner's claim that counsel was ineffective for failing to investigate exculpatory evidence, such as the operability of the weapon involved, the weapons taken into custody, the drug amount and the constructive possession of the drug, is also without merit. As with **claim five**, supra, even if we assume without deciding that counsel was deficient as suggested, there is nothing in the record before this Court, other than petitioner's self-serving and after the fact allegations, which this Court finds unbelievable in light of the record as a whole, that he would have

insisted on proceeding to trial.

The rejection by the state courts of petitioner's challenges was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must be denied pursuant to 28 U.S.C. §2254(d). Williams, supra.

In **claim nine**, petitioner asserts he was denied effective assistance of counsel pursuant to the Sixth Amendment when Attorney Millan failed to investigate or otherwise prepare for sentencing and hearing on petitioner's motion to withdraw guilty plea. (DE#1:21). In particular, petitioner faults counsel for failing to investigate and proffer mitigating psychological information at sentencing and for failing to prepare for and represent petitioner at the motion to withdraw hearing.

When this claim was raised in the Rule 3.850 proceeding, the trial court denied the claim following an evidentiary hearing. (Transcript of September 4, 2009 hearing:1-84, DE#19,R2:99). At the hearing, Attorney Millan testified, in pertinent part, as follows:

Q. [W]hat information had he given you regarding his drug background:

A. His drug background in terms of usage?

Q. Yes.

A. In terms of usage he told me he had a car accident. A serious car accident. He had injured his back. Based on those injuries he became hooked on pain pills. I think Vicodin and some others. That he would go - - he became addicted to the extent he would go from doctor to doctor in order to obtain the prescription in order to satisfy his addiction to those pills, and then told me later on he was unable to get anymore pills so that he then became or started using heroin to make up the same effect. That

40

relief he felt it had for him that in pills would feel.

Q. That's exactly the history represented at sentencing?

A. Correct.

\* \* \* \* \*

A. We discussed in general him testifying and not testifying, also what his allegations were with surrounded allegations with regards to Mr. Wiseman and what witnesses and evidence we would bring out or not bring out. What he wanted to present, what he wanted to do we discussed it as late as two days before the actual hearing.

Q. We are talking about the June 16th hearing.

A. On June 4th I visit him, and we went through it again to see do you want to testify or not testify. He maintained all along from the time I first was retained on the case until the time he actually testified that he wanted to testify. What we discussed the flip side of it what happen if you don't testify, what happened, how I thought, what his thoughts were if the motion would have been successful or not. It was his opinion and I concurred the only way he could sell Mr. Wiseman ineffectiveness as he saw it, and also sell his fact he felt pressured into taking a plea, and all facts and circumstances surrounding it is if he got up there and said it. There was no one else who could say it or do it.

Q. Did you explain to him if you wanted to proceed with the motion to vacate you are going to be testifying immediately proceeding if your motion is denied your sentence?

A. We discussed it in slightly a different context. That do you understand whatever you say the judge is going to apply to the sentencing, the good part with the bad part is same applicable things. There maybe some more things you need to expand upon which he did as far as drug usage that was the focus of the second time he testified in sentencing, and abuse, and things that were going on in his life which were applicable to the motion. The other thing we discussed what would you do if you don't testify, what she would rule on, were there any other witnesses that we thought we could bring out to surrounding his specific motion. At that point there

weren't any reason to bring Kenny in. He didn't want to do that. Then we could call Mr. Riestein and didn't want to do that.

* * * * *

Q. I now want to go ground 43 where the defendant alleges that you did not review [psychological] records, and did not present them at sentencing. Were you aware of [psychological] records of the defendant?

A. No.

Q. At that time?

A. Not at that time. I learned he may have been [Baker] acted. I don't know that for sure. But it was [] posed to me by yourself when we met in July.

Q. He never told you?

A. Never told me nor did anyone else.

Q. You were never informed or given [Baker] act paperwork to use at mitigation?

A. No.

Q. Had you been aware of that would you have used it?

A. Of course. We discussed - I don't mean in terms of digression. In terms of preparing that on one hand we are going to do our motion, and on the other hand we need to be prepared to do the sentencing if the motion doesn't work. Is there anything else I should be looking at, is there anybody else I need to talk to? We discussed certain witnesses we need to talk to at his sentencing. We discussed I filed his police accommodations, and letters of good conduct, and things like that toward the sentencing, but the mental health issue never came up, nor did I notice. Meaning it was never told to me, or brought to my attention. I checked the court file. There was nothing in there at the time, and no one else mentioned it to me. The other thing though when we went through with what else should be presented that's what he discussed his drug usage to the extent it described it no more no less.

Q. Did he ever tell you that at the time he took the plea

42

Kenny Wiseman said I'm not ready to go to trial?

A. No.

Q. Had he said that to you? Would you have used that as one of the other reasons for good cause in your motion to vacate?

A. Sure. I would have argued it.

\* \* \* \* \*

Q. When you went to visit him in the jail would you describe he was on the psych floor?

A. No.

\* \* \* \* \*

Q. You testified you wasn't aware of his mental health status?

A. Hum hum.

Q. Did you ever ask Mr. Wiseman for his file?

A. Yes at nauseam. I called Mr. Wiseman several times. I wrote him letters twice. Everything went unanswered. I think I spoke to a live body once. I stopped him several times in the hall way.

Q. When you call how many times did they tell you he was out of the country if any?

\* \* \* \* \*

A. When I called the answers generally were there was a fire in the office, and the files got destroyed. Some of the files are in disarray. That's one time I did call I got a live body. When I saw Kenny that was also part of the same explanation, or he had been out of town, and he had recently come back ill try to get it back to you. Im going out when I get back next week I'll get it to you that was it.

Q. You didn't get the file ever correct?

A. No. I went to the court file and copied everything out of the court file.

Q. You would agree some information you needed to know
about my client['] mental health for mitigation
purposes, correct?

A. If there was mental health that existed in his file
then that would have helped correct, but by the same
token when I asked [my] client at the time Michael didn't
tell me there was anything. I didn't see anything in the
court file to indicate so, then because Michael could
have said to me look [] Steve I gave Kenny these records
or in the process of getting those records. That part of
the conversation never came up. He never told me so yes
I could have discovered it in Kenny's file, but my client
could have just told me.

(Transcript of September 4, 2009 hearing:50-71). The trial court's
denial was subsequently affirmed on appeal. Flynn v. State, 57
So.3d 861 (Fla. 3d DCA 2011).


     As to this claim, the trial court found the trial lawyer's
testimony was credible. Determinations of credibility are best made
by the trial court judge, who can assess the demeanor and candor of
the witnesses. Gore v. Secretary for Dept. of Corrections, 492 F.3d
1273, 1300 (11th Cir. 2007)(noting that while reviewing court also
gives a certain amount of deference to credibility determinations,
that deference is heightened on habeas review), citing, Rice v.
Collins, 546 U.S. 333, 341-42 (2006)(stating that "[r]easonable
minds reviewing the record might disagree about the prosecutor's
credibility, but on habeas review that does not suffice to
supersede the trial court's credibility determination). See also
Baldwin v. Johnson 152 F.3d 1304, 1317 (11th Cir. 1998), citing,
Marshall v. Lonberger, 459 U.S. 422, 434 (1983)("Title 28 U.S.C.
§2254(d) gives federal habeas [corpus] courts no license to
redetermine credibility of witnesses whose demeanor has been
observed by the state trial court, but not by them."); Smith v.
Kemp, 715 F.2d 1459, 1465 (11th Cir.)("Resolution of conflicts in
evidence and credibility issues rests within the province of the
state habeas court, provided petitioner has been afforded the

opportunity to a full and fair hearing."), <u>cert</u>. <u>denied</u>, 464 U.S. 1003 (1983).

Thorough review of the record in this case yields no suggestion that the trial court's findings of fact made after the evidentiary hearing was not supported by the record or were otherwise deficient. Because petitioner has not rebutted the trial court's findings of fact by clear and convincing evidence, the findings are presumed correct. <u>See</u> 28 U.S.C. §2254(e)(1). Based upon the court's findings and credibility determinations, the trial court properly ruled that petitioner was not entitled to post-conviction relief and counsel's performance had not been constitutionally ineffective with regard to this claim.[13]

In **claim ten**, petitioner asserts he was denied his Fourteenth Amendment right to due process of law as a result of numerous instances of prosecutorial misconduct. (DE#1:24).

First, petitioner faults the state for knowingly and willfully failing to inform the court, petitioner and/or defense counsel of the mandatory $50,000 fine before, during and/or immediately following the change of plea hearing. (DE#1:24). Moreover, the state knowingly and willfully misrepresented the mandatory nature of the $50,000 fine to the court and petitioner in a direct attempt to distort the judicial fact finding process. (<u>Id.</u>). Thus,

---

[13]The state court's factual findings are generally entitled to a presumption of correctness and may be ignored only if the petitioner shows by clear and convincing evidence that the state court's determination was not fairly supported by the record. 28 U.S.C. §2254(e)(1). <u>See</u> <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003). <u>See also</u> <u>Griffin v. Wainwright</u>, 760 F.2d 1505, 1511 (11th Cir. 1985)(quoting pre-AEDPA § 2254(d)). This principle holds true for both explicit and implicit findings of fact by a state court. <u>See</u> <u>Green v. Johnson</u>, 160 F.3d 1029, 1045 (5th Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1174 (1999). Accordingly, if it is clear that the finder of fact would have granted the relief sought by the petitioner had it believed the testimony of certain witnesses, "its failure to grant relief was tantamount to an express finding against the credibility of [those witnesses]." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1983), <u>citing</u>, <u>LaVallee v. Delle Rose</u>, 410 U.S. 690 (1973).

rendering petitioner' guilty plea unknowing and involuntary. (<u>Id.</u>:25). Likewise, the state's misrepresentation violated petitioner's right to a full and fair proceeding, in violation of his due process rights. (<u>Id.</u>).

Even if we assume that petitioner is correct that the prosecutor failed to inform the court, petitioner and/or defense counsel of the mandatory fine before, during and or immediately following the change of plea hearing, as discussed in relation to **claim five**, <u>supra</u>, there is nothing in the record before this Court, other than petitioner's vague and self-serving allegations, that he would have insisted on proceeding to trial instead of pleading guilty had he known of the mandatory fine.

Likewise, petitioner's claim that the prosecutor knowingly and willfully misrepresented the mandatory nature of the $50,000 fine to the court and petitioner during the sentencing hearing in attempts to distort the judicial fact finding process is also without merit. First, any argument that the foregoing rendered petitioner's plea involuntary fails as the subject comments were made well after the entry of his guilty plea. Notwithstanding, a review of the sentencing hearing reveals the prosecutor did in fact say "There's also a $50,000 fine which the Court can impose or choose not to impose with regards to the prison sentence that we're considering and asking your Honor to consider . . . we are not asking that you impose the $50,000 which is not your discretion to not do." (June 16, 2006 hearing:161-162). Regardless whether the prosecutor correctly expressed that the fine was mandatory in nature, petitioner was nonetheless subject to it. Therefore, while the state's comments may not have been accurate, petitioner has not shown he was prejudiced as a result thereof.

Next, petitioner explains he entered a plea of guilty to the

46

armed kidnapping and aggravated battery with a firearm;
specifically, a 9mm handgun, but that after doing so, he learned
that the only firearm preserved as evidence was a .40 Cal. "Glock."
(DE#1:25). He also claims law enforcement seized two identical 9mm
handguns, not as evidence, but personal property. (Id.). Thus, the
state acted in bad faith in failing to disclose this exculpatory
evidence.

When this identical claim was raised in petitioner's amended
Rule 3.850 motion (DE#19,R2:62), the state argued as follows:

> The defendant alleges that the State failed to violated
> [sic] its obligation under *Brady* by failing to disclose
> all property records of firearms seized by the North
> Miami Beach Police Department. However, the defendant
> fails to state how the other firearms discovered were in
> fact exculpatory. The firearm that was disclosed, the 40
> caliber Glock, which was located in the home, was the one
> that tested positive for the victim's DNA. (See Exhibit
> 1, testimony of Detective Stein). In addition, the
> defendant admits, at the same hearing, that he forced a
> gun down the mouth of the victim (See Exhibit I, page
> 89). As such, the defendant fails to state how the
> presence of any other firearms would be exculpatory. This
> ground should be stricken.

(Id.:91). On appeal, in response to this claim, the state argued:

> The sixth and final claim is that the trial court erred
> in denying the Rule 3.850 motion as the court failed to
> allow the defendant to admit evidence to show there was
> prosecutorial misconduct that warranted withdrawal of the
> plea. The defendant claims in this ground that [] upon
> his arrest the state seized a nine millimeter Glock
> firearm and the victim testified that a nine millimeter
> gun was used. The state produced sworn affidavits that
> the gun used was a nine millimeter Glock firearm.
> However, the state through discovery provided evidence of
> a 40 millimeter Glock firearm and such information was
> mistakenly relied upon.

Once a knowing and voluntary plea of guilty has been

> entered with the benefit of competent counsel, all non-
> jurisdictional defects in the proceedings are waived.
> <u>United States v. Broce</u>, 488 U.S. 563 (1989); <u>United
> States v. Bell</u>, 966 F.2d 914, 915 (5th Cir. 1992);
> <u>Dermota v. United States</u>, 895 F.2d 1324 (11th Cir.),
> *cert. denied* 498 U.S. 837 (1990). A guilty plea cuts off
> all inquiry into all issues arising prior to the date of
> the plea. <u>Baker v. State</u>, 879 So.2d 663, 664 (Fla. 5th
> DCA 2004). A voluntary plea of guilt waives any defect
> not jurisdictional. <u>Williams v. State</u>, 259 So.2d 753, 754
> (Fla. App. 1972). For instance, by pleading guilty, the
> defendant waived his right to contend that he was
> deprived of the right to a speedy trial or to take a
> discovery deposition of the state's complaining witness.
> <u>Scott v. State</u>, 866 So.2d 213, 214 (Fla. 3d DCA 2004);
> <u>Monge v. State</u>, 286 So.2d 34 (Fla. 3d DCA 1973).
> Therefore, because this claim alleges a discovery
> violation prior to the guilty plea, it has no merit.

(DE#18,Ex.G:15-17). This claim was subsequently affirmed on appeal.
<u>Flynn</u>, 57 So.3d 861 (Fla. 3d DCA 2011).

Petitioner's argument that his guilty plea was not knowing and
voluntary because of the state's alleged <u>Brady</u> violation, which
occurred before his guilty plea was entered, fails as a matter of
law. <u>See</u> <u>Orman v. Cain</u>, 228 F.3d 616, 617 (5th Cir.2000) ("Brady
requires a prosecutor to disclose exculpatory evidence for purposes
of ensuring a fair trial, a concern that is absent when a defendant
waives trial and pleads guilty.). Because the Supreme Court has not
extended <u>Brady</u> to proceedings in which the defendant enters a plea
of guilty, the state habeas court's denial of petitioner's <u>Brady</u>
claim was not unreasonable. <u>See</u> <u>Orman v. Cain</u>, 228 F.3d at 621
(holding that, under AEDPA standards, it is "patently reasonable"
for courts to decide not to extend <u>Brady</u> to guilty pleas); <u>see also</u>
<u>Matthew v. Johnson</u>, 201 F.3d 353, 361-62 (5th Cir.2000) ("Because
a <u>Brady</u> violation is defined in terms of the potential effects of
undisclosed information on a judge's or jury's assessment of guilt,
it follows that the failure of a prosecutor to disclose exculpatory
information to an individual waiving his right to trial is not a

48

constitutional violation.") (internal quotation omitted); <u>see also</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 634, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (Thomas, J., concurring) ("The principle supporting <u>Brady</u> was avoidance of an unfair trial to the accused. That concern is not implicated at the plea stage regardless.") (internal quotation omitted). Accordingly, a prosecutor's failure to disclose potentially exculpatory material to a criminal defendant prior to entry of a guilty plea does not constitute a violation of <u>Brady</u> or the Due Process Clause. Under these circumstances, the state court's rejection of this claim was in accordance with federal constitutional principles and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

Finally, petitioner argues the state committed prosecutorial misconduct when, during the sentencing hearing, the prosecutor lodged a personal opinion and argued facts not in evidence, which ultimately influenced the court. (DE#1:27). As a result of the state's comments, petitioner received a disproportionate sentence and entered into an invalid plea. (<u>Id.</u>:28).

When this identical claim was raised in petitioner's amended Rule 3.850 motion (DE#1:63), the state argued as follows:

> The defendant alleges that Assistant State Attorney Luis Caso presented false testimony to the Court regarding the defendant's actions. Counsel fails to state how this directly prejudiced the defendant at the time of sentencing. More importantly, counsel fails to state when during the two year pendency of the F04-32198 case, ASA Caso made those statements. As such, the State is unable to respond to this ground and asks that this ground be stricken.

(DE#19,R2:92). In order to address this particular claim, it is best to evaluate the prosecutor's comment in the context in which it was said. The pertinent portion of the sentencing transcript

reveals the following:

> Mr. Flynn was relieved of duty as a police officer as a result of his arrest on the armed kidnapping and placed at a desk job with the police department, but he was still working for the City, and he did have a City car.
>
> The police did several surveillances where they saw this woman enter the car driven by defendant on several occasions. He would drive over at another location. She would get out, and she would go into the drug hole and come back. You knew she was seen coming. They thought it was more of her other business as opposed to drugs, but in looking at what was going on, they realized there was something going on having to do with drugs because of activities that were being observed by them. She was eventually arrested for purchasing of cocaine, and at that point she agreed to cooperate with the police and tell them now what's been going on with the defendant.
>
> The person - - an individual by the name of Mr. Willis was also contacted, and he also agreed to cooperate on the day in question.
>
> [W]ith what they told the police about their relationship with Mr. Flynn is that they've known him since he was a patrol officer when he started out in the City of Miami in the Overtown area, that you knew what they did and never arrested them, and over the years they became friendly, and around 1997, according to Mr. Willis, Mr. Flynn has been mentioned here, started asking him if he could buy drugs from him the drugs he was interested in was Vicadin and Percocet, and he would initially buy fewer amounts and later would buy more and up to 500 pills at one time. It got to the point where Mr. Flynn did not have enough money to purchase these pills.
>
> What he would have Mr. Willis do is go up to the dealer, say to the dealer, I want to buy pills, give me the pills, I'll bring back the money and as Mr. Willis was walking away the defendant, acting as a police officer, would come and arrest Mr. Willis or pretend to arrest him and take the drugs. So in essence, he was ripping off the drug dealers for these drugs.

(Transcript of June 16, 2006 hearing:114-115). Based on the foregoing, it is reasonable to conclude that the prosecutor's

remark at the sentencing hearing regarding how petitioner would conduct the offense charged was a fair comment as to what occurred. Likewise, the remarks were not made in attempt to influence the sentence by presenting the court with conjecture, opinion, or disparaging information. Accordingly, the state court's rejection of defendant's claim that the prosecutor committed prosecutorial misconduct at the sentencing hearing was not an unreasonable application of clearly established federal law and does not support federal habeas relief. 28 U.S.C.A. §2254(d)(1).

In **claim eleven**, petitioner asserts he was denied his Fourteenth Amendment rights to due process, trial by jury, and all his corresponding criminal trial rights because his drug related convictions, pursuant to Sections 893.13(6)(a) and 893.135(1)(c)1, are void for failure to include a *mens rea* requirement. (DE#51:34).

Petitioner's attempt to raise this new claim in his reply is not authorized by the applicable rules. Petitioner was required to state all of his claims in his petition. See Rule 2(c), Rules Governing Habeas Corpus Cases Under Section 2254 ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."). He may not amend his petition as a matter of course by including a new and independent claim in his reply, since respondent had already served its answer. See Fed.R.Civ.P. 15(a)(a party is permitted to amend a pleading once "as a matter of course" at any time before a responsive pleading is served or, otherwise, only by leave of court or by written consent of the adverse party); Rule 11 of the Rules Governing Section 2254 Proceedings (district court may apply the Federal Rules of Civil Procedure consistent with the Rules Governing Section 2254 Proceedings).

In sum, petitioner did not raise this claim in his petition, he did not seek prior leave to amend to add this claim, but rather

waited until filing his reply to seek leave to do so. (See DE#51:34). Petitioner is barred from raising the new claim in his reply since the respondent has not been afforded an opportunity to address it. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994)(traverse is not proper pleading to raise additional grounds for relief; in order for state to be properly advised of additional claims, they should be raised in amended petition or statement of additional claim); see also Klauer v. McNeil, 2009 WL 2399928 at *30 (N.D. Fla. July 31, 2009); Cleckler v. McNeil, 2009 WL 700818 at *11 n.4 (N.D. Fla. March 16, 2009).

This Court is nonetheless mindful of its responsibility to address all claims raised in a petition. Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992). However, Clisby does not require or suggest consideration of a claim raised for the first time in a reply.

Notwithstanding, this claim is without merit. The United States District Court for the Middle District of Florida held on July 27, 2001, in Shelton v. Sec'y, Dep't. of Corr., 802 F.Supp.2d 1289 (M.D.Fla. 2011) that Fla.Stat. §893.13, as amended by Fla.Stat. §893.101, was facially unconstitutional in violation of federal due process principles, because the statute did not include knowledge of the illicit nature of the substance as an element of the offense, thereby, eliminating all *mens rea*. The State appealed the decision. On August 24, 2012, the Eleventh Circuit Court of Appeals reversed the Middle District's decision, holding that the Florida Supreme Court's opinion in State v. Adkins, 96 So.3d 412 (Fla. 2012), upholding Florida's Comprehensive Drug Abuse Prevention and Control Act under the Due Process Clauses of the Florida and the United States Constitutions, was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." Shelton v. Sec'y,

Dep't. of Corr., 691 F.3d 1348 (11th Cir. 2012). The Eleventh
Circuit concluded that "nothing in the U.S. Reports decides or
implies resolution of the novel issue of the Florida Act's
constitutionality, and we cannot find Florida's adjudication to be
unreasonable under AEDPA". Id. at 1355. On April 15, 2013, the
United States Supreme Court denied Shelton certiorari review.
Shelton v. Crews, ____ U.S. ____, 133 S.Ct. 1856, 185 L.Ed.2d 822
(2013).

     The Florida Supreme Court and state district courts of appeal
have all now rejected the Middle District's holding in Shelton v.
Sec'y, Dep't. of Corr., 802 F.Supp.2d 1289 (M.D.Fla. 2011) and
found Florida's Comprehensive Drug Abuse Prevention and Control
Act, Chapter 893, Fla.Stat., facially constitutional. See Shelton,
691 F.3d 1348; State v. Adkins, 96 So.3d 412 (Fla. 2012); Davis v.
State, 100 So.3d 224 (Fla. 4th DCA 2012)(holding that the reasoning
of the Middle District in Shelton is inapplicable to a drug
trafficking offense as the trafficking statute expressly contains
a mens rea requirement that a defendant "knowingly" possess, sell,
purchase, manufacture, deliver, or bring into this state the drugs
in question, thus, no possibility exists that a defendant could be
held strictly liable for an "unknowing" possession or delivery of
the drugs); Maestas v. State, 76 So.3d 991 (Fla. 4th DCA
2011)(expressly finding the reasoning of the Middle District's
decision in Shelton unpersuasive and declining to adopt its
holding); Little v. State, 77 So.3d 722 (Fla. 3d DCA 2011); Holcy
v. State, 83 So.3d 778 (Fla. 5th DCA 2011); Flagg v. State, 74
So.3d 138 (Fla. 1st DCA 2011).

     Entry of the convictions and sentences in this case did not
result in a miscarriage of justice. Petitioner's challenge to the
constitutionality of his state narcotics convictions on the ground
that Fla.Stat. §893.13 charges strict liability crimes, thereby,

eliminating the *mens rea* element is meritless. As pointed out above, the Eleventh Circuit, Florida Supreme Court and state district courts of appeal have all now rejected the Middle District's holding in <u>Shelton v. Sec'y, Dep't of Corr.</u>, 802 F.Supp.2d 1289 (M.D.Fla. 2011) and found Florida's Comprehensive Drug Abuse Prevention and Control Act, Chapter 893, <u>Fla.Stat.</u>, facially constitutional. <u>See</u> <u>Shelton</u>, 691 F.3d 1348; <u>Adkins</u>, 96 So.3d 412; <u>Davis</u>, 100 So.3d 224; <u>Maestas</u>, 76 So.3d 991; <u>Little</u>, 77 So.3d 722; <u>Holcy</u>, 83 So.3d 778; <u>Flagg</u>, 74 So.3d 138. Consequently, petitioner's claim that his state narcotics convictions and sentences are unconstitutional fails on the merits.

<u>Evidentiary Hearing</u>

Any request by the petitioner for an evidentiary hearing on any or all the claims raised in this federal petition should be denied. To be entitled to an evidentiary hearing on habeas claims, petitioner must allege facts that, if proved at the hearing, would entitle her to relief. <u>See</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474-75, 127 S.Ct. 1933, 1940 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). For reasons discussed herein, an evidentiary hearing is not required for the disposition of this case. <u>Id.</u> <u>See also</u> <u>Atwater v. Crosby</u>, 451 F.3d 799, 812 (11th Cir. 2006)(addressing petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). Petitioner has failed to demonstrate the existence of any factual dispute that warrants a federal evidentiary hearing.

<u>Certificate of Appealability</u>

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and that if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts (hereinafter "Habeas Rules"). Rule 11(a) further provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." <u>Id.</u> Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Habeas Rules.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a habeas petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000). Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" <u>Rose v. Lee</u>, 252 F.3d 676, 684 (4th Cir.2001)(<u>quoting</u> <u>Slack</u>, 529 U.S. at 484). "Each component of the

§2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." <u>Slack</u>, 529 U.S. at 484-85.

Having determined that petitioner is not entitled to relief on the merits, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in the instant petition.    After reviewing the claims presented in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further.   Accordingly, a certificate of appealability is not warranted.   <u>See</u> <u>Miller-El</u>, 537 U.S. at 336-38; <u>Slack</u>, 529 U.S. at 483-84.

<u>Conclusion</u>

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied, that no certificate of appealability be issued, and the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report, including any objections to the recommendation that no certificate of appealability be issued.

SIGNED this 20th day of November, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

```
cc:  Benjamin Samuel Waxman, Esq.
     Robbins Tunkey Ross Amsel Raben, et. al.
     2250 SW 3rd Avenue
     4th Floor
     Miami, FL 33129

     Jill D. Kramer, AAG
     Attorney General Office
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131
```