UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-22765-CIV-SEITZ/WHITE

MICHAEL P. FLYNN,

    Petitioner,

v.

JULIE L. JONES,

    Respondent.
_____/

**ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION,
DENYING PETITIONER'S HABEAS PETITION, AND
DENYING CERTIFICATE OF APPEALABILITY**

THIS MATTER is before the Court on Magistrate Judge Patrick A. White's Report and Recommendation [DE 59], recommending dismissal of Claims 1, 2, 4, 5, 6, 9, 10, and 11 of Petitioner Flynn's habeas petition under 28 U.S.C. § 2254 [DE 1].[1] Petitioner timely objected [DE 62] to the Report's findings as to Claims 1, 2, 4, 5, 6, and 9.[2] These remaining Claims fall into two categories: (I) that the state court denied him due process during his plea colloquy (Claims 1 and 2) and (II) that trial and sentencing counsel were ineffective (Claims 4, 5, 6, 9).

Petitioner's objections reargue his position that his open plea was involuntary because the plea colloquy was "permeated" by confusion and did not establish a factual basis (Claims 1-2); trial counsel failed to convey plea offers (Claim 4), misadvised him of his sentence (Claim 5), and failed to investigate potentially exculpatory evidence (Claim 6); and sentencing counsel failed to present mitigation evidence (Claim 9). The Court has reviewed *de novo* the record, the Report, and the objections and must deny each of Petitioner's claims without an evidentiary hearing because they are either procedurally defaulted or contradicted by the substantial record evidence.

---

[1] Petitioner has conceded that Claims 3, 7, and 8 should be dismissed. [DE 51.]
[2] Petitioner did not object to the Report's recommendation to deny Claim 10 for prosecutorial misconduct and Claim 11, which Petitioner first raised in his reply [DE 51]. After *de novo* review, the Court agrees that these claims should be dismissed.

1

## Background[3]

Petitioner Flynn served as a police officer for twenty-three years, mostly in the narcotics division. In July 2003, he was charged with kidnapping with a weapon and aggravated battery with a deadly weapon for allegedly attacking his girlfriend and forcing a gun into her mouth, No. 03-19458. Approximately one year later while out on bond, he was caught buying "51 zip lock baggies" of heroin weighing over four grams and charged with trafficking in illegal drugs and possession of cocaine, No. 04-32198. On February 8, 2006, the day of trial in his domestic violence case, Petitioner decided to plead guilty to both cases without a plea agreement. Despite repeated warnings of a possible life sentence, he repeatedly and unambiguously testified that he understood his potential maximum sentence [(DE 19-2 (Tr. 18:5-8, 30:8-15)] but wanted to plead in order to "take responsibility for [his] actions" (*id.* at 20:23-21:1, 26:4-6, 29:5-11, 33:10-12; *see also id.* at 18:9-19). He also testified that he had reviewed the criminal information and was admitting to each charge (*id.* at 31:11-32:8, *see also id.* at 17:11-17) and that no one had indicated or promised what his actual sentence would be (*id.* at 13:4-15:11, 18:24-19:7, 28:20-29:4). Finally, he testified that he was satisfied with trial counsel Kenneth Weisman's handling of his case (*id.* at 20:5-11, 26:7-17; *see also id.* at 4:21-5:11) and that his attorney did not force him to plead (*id.* at 26:18-25). Finding that Petitioner's plea was knowing and voluntary, that Petitioner was competent, and that there was a factual basis for the plea based on the parties' stipulations, the informations, and affidavits, the court accepted his plea. (*Id.* at 32:9-33:6.)

Petitioner subsequently moved *pro se* to withdraw his plea under Florida Rule of Criminal Procedure 3.170(f), complaining that he had been confused and that Attorney Weisman was ineffective in failing to communicate plea offers and investigate potentially exculpatory evidence [*see* DE 19-3]. On June 16, 2006, new counsel Steven Millan argued this motion and

---

[3] The Report's detailed discussion of the procedural history is incorporated by reference.

2

Petitioner testified, but, finding Flynn's credibility "very questionable" [DE 19-3 (Tr. 47:24-48:1)], the court denied the motion. Later that day, during sentencing, Millan called Petitioner's father, mother, and two sisters, who testified about his character, drug use, and mental health history. Flynn also testified, reiterating his guilt and desire to accept responsibility for his actions [DE 19-3 (Tr. 72:22-73:6, 82:24-83:1, 89:17-21); DE 19-4 (Tr. 109:2-18, 110:14-18)]. The court imposed consecutive sentences, totaling thirty-five years in prison with a minimum mandatory term of thirteen years and a mandatory $50,000 fine for trafficking in heroin. The trial court's denial of Flynn's pre-sentence motion to withdraw his plea was affirmed on appeal. *Flynn v. State*, 980 So.2d 504 (Fla. 3d DCA 2008).

In 2009, Petitioner – with the assistance of another attorney – filed a Rule 3.850 motion raising forty-six claims, including more than thirty claims of ineffective assistance of trial counsel (Weisman) and sentencing counsel (Millan) [DE 19-1, pp. 24-41, 55-73]. After a limited evidentiary hearing,[4] his motion was denied in a form order [DE 19, p. 103], which was affirmed without opinion. *Flynn v. State*, 57 So.3d 861 (Fla. 3d DCA 2011). In his second 3.850 motion, he raised the two claims of trial court error alleged here, which were denied as time-barred and for failure to raise them on direct appeal, and reiterated several of his ineffective assistance claims from his first 3.850 motion, which were denied as successive [DE 26-2, p. 2]. This decision was also affirmed without opinion. *Flynn v. State*, 133 So.3d 939 (Fla. 3d DCA 2013).

## Analysis

In his federal habeas petition, Petitioner raised eleven claims relating to trial court error and ineffective assistance of trial and sentencing counsel. The Report recommended denying all claims. Flynn's objections to Claims 1-2, 4-6, and 9 will be addressed in turn. Except with

---

[4] Three witnesses testified. The state called Attorneys Weisman and Millan, and Petitioner, through counsel, cross examined them. Petitioner then began to testify, but the judge terminated the hearing after twelve pages of transcript, finding that the plea colloquy contradicted Petitioner's account.

3

respect to Claims 5 and 9, Petitioner does not challenge any of the Report's factual findings based on the record; he merely disagrees with its interpretation of those facts. Based on the Court's *de novo* review of the record, the Court finds the Report's factual determinations, particularly as to Petitioner's credibility, not clearly erroneous and in fact amply supported by the record. As to Petitioner's objections to the Report's legal conclusions, none have merit.

> **I.    *The state court did not err in denying Petitioner's claims of trial court error.***
>
>> A.    *Claim 1 – The trial court's alleged failure to advise Petitioner of direct consequences of his guilty plea.*

In Claim 1, Petitioner contends that he was deprived of due process during his plea when the trial court failed accurately to advise him of (1) his mandatory minimum and maximum sentence and (2) the mandatory $50,000 fine.

(1) As to his sentence exposure, the Report found that this claim was contradicted by the record because the only possible confusion concerned the court's summation of a second prison term consecutive to a life sentence. In his objections, Flynn maintains that the court's warnings as to his sentence exposure were "confusing, inaccurate, inconsistent, and contradictory" and that his "single, out-of-context" statement that he understood what "life" meant did not counteract the prejudice. [DE 62, pp. 2-3.] This characterization exaggerates the facts. Five separate times the court emphasized the possibility of life imprisonment plus a consecutive term of additional imprisonment and ultimately advised Petitioner of his correct minimum mandatory and maximum sentence; each time Petitioner, a police officer of twenty-three years, testified under oath that he understood his sentence. [DE 19-2 (Tr. 14:6-15:11, 17:13-18:8, 23:11-22, 24:17-23, 30:8-15.] In fact, Petitioner conceded under oath at the hearing on his motion to withdraw his plea months later that he had understood "what the max was." [DE 19-3 (Tr. 36:18-37:4).]

(2) As to the trial court's alleged failure to advise Flynn of the statutory fine, the Report

4

found that this claim was procedurally defaulted because this issue was brought as an ineffective assistance claim for sentence misadvice in Petitioner's initial 3.850 motion and only raised as a claim of trial court error on post-conviction appeal. Furthermore, Petitioner has not shown either cause and prejudice or actual innocence to overcome the procedural bar.

Petitioner admits he did not raise this claim on direct appeal but objects that he addressed it "vis-à-vis" his ineffective assistance claim in his Rule 3.850 motion [DE 19-1 pp. 28, 35-37]. Even reading Flynn's cited section liberally to support that post-conviction counsel raised the issue of trial court error as distinct from his ineffective assistance claim, Petitioner did not "fairly present" it as *federal* constitutional claim. *See Preston v. Sec'y, Florida Dep't of Corr.*, 785 F.3d 449, 457-58 (11th Cir. 2015) (collecting cases and holding that "a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim"). Flynn raised this issue in terms of a violation of Florida Rule of Criminal Procedure 3.172(c)(1) governing pleas and cited almost exclusively to state case law. He did not cite *Boykin v. Alabama*, 395 U.S. 238 (1969)[5] or even label it as a federal claim.

Petitioner made only two references to federal law, neither of which was sufficient to alert the state court to a federal claim of trial court error. First, in a hard-to-follow sentence referencing trial counsel's "obvious and prejudicial" failure to object properly to the court's error, he quoted the plain error standard from a factually and procedurally unrelated Ninth Circuit case on deficient jury instructions with no hint of any federal due process guilty plea analysis. Second, Petitioner concluded with a blanket reference to a "violation" under the "Sixth Amendment and the Due Process Clause of the Federal Constitution as well as the Florida Constitution." Given only these passing allusions to federal law, the state treated this claim as

---

[5] In fact, while Petitioner quoted a passage from a state case which ultimately derived from *Boykin*, he omitted any reference to *Boykin*.

one of ineffective assistance of counsel and did not recognize it as a claim of trial court error, much less a federal one, until appeal. Nor did the state court which ruled on Petitioner's second 3.850 motion deny his federal claim of trial court error in that motion as successive.

Assuming Petitioner "fairly presented" this claim to the state court by clarifying it later in the proceedings, it is still barred because he failed to raise it on direct appeal. *See* Fla. R. Crim. P. 3.850 (explaining that any claim that "could have or should have" been raised on direct appeal cannot be raised for the first time in a Rule 3.850 motion). As the Report noted, once this issue was raised as a federal claim on appeal, the state's sole response was procedural default.[6] Critically, the only state trial court presented with his federal claim of trial court error was the court deciding his second 3.850 motion. That court clearly denied this claim as barred for failure to raise it on direct appeal, and its decision was affirmed without opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). Thus, Petitioner's fine claim is procedurally defaulted. Both objections are overruled.

### B. Claim 2 – The court's alleged failure to determine a factual basis for the plea.

The Report recommended denying this claim because it does not state a federal constitutional claim and, in any event, the parties stipulated to a factual basis. Flynn objects that a factual basis is necessary to ensuring due process, as is underscored by the fact that "a factual basis for a plea is part of all Rule 11 and Fla. R. Crim. P. 3.172 proceedings." [DE 62, p. 3.]

As the Report noted, the Eleventh Circuit has long held that these procedural rules do not impose a constitutional requirement on state judges to determine a factual basis for a guilty plea

---

[6] Although the state distinguished some of the cases Petitioner cited on appeal, it did so in the context of arguing Petitioner's lack of entitlement to a hearing on this claim.

absent a contemporaneous claim of innocence. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983). During his plea colloquy, Petitioner admitted responsibility, never indicated confusion as to his charges, and never raised any defenses. As a result, Petitioner's citation to *Allen v. State* is inapposite. 876 So. 2d 737 (Fla. 1st DCA 2004) (holding that the trial court's failure to inquire into the factual basis for the plea raised doubt as to its voluntariness because defendant raised a possible defense to all charges during his plea colloquy). This objection is overruled.

## II. The state court did not err in denying Petitioner's claims of ineffective assistance of trial or sentencing counsel.

### A. Claim 4 – Trial counsel's alleged failure to convey plea offers to Petitioner.

The Report recommended dismissing this claim as procedurally defaulted, because Flynn failed to exhaust it on appeal of the denial of his 3.850 motion. Backtracking from his previous concession that he did not preserve this claim [DE 51, p. 17], Petitioner now objects "upon more thoughtful consideration" that he did. Specifically, he insists, without any legal support, that his reference to "several issues including an ineffective assistance of counsel issue" in the heading of a section of his appellate brief [DE 18-2, pp. 28-32] exhausted this claim. [DE 62, p. 5.]

The cited section of that brief, which was prepared by counsel, concerned only Petitioner's due process challenge to the sufficiency of his 3.850 evidentiary hearing and did not identify, much less argue, the facts or law relating to his plea offer claim. Petitioner's sole blanket reference to "an ineffective assistance of counsel issue," particularly given that he had raised over thirty ineffective assistance claims against two different attorneys in his 3.850 motion, failed to exhaust his plea offer claim. *See Duest v. Dugger*, 555 So. 2d 849, 852 (Fla. 1990); *see also Doorbal v. Dep't of Corr.*, 572 F.3d 1222, 1229 (11th Cir. 2009) (finding that petitioner failed to exhaust his ineffective assistance claim by appealing only the sufficiency of the court's order rather than the claim's merits). This objection is overruled.

7

> B. *Claim 5 – Trial counsel's alleged misadvice as to the consequences of Petitioner's plea.*

In this claim, Petitioner contends that counsel told him he would receive concurrent sentences of no more than ten years and failed to alert him to the mandatory fine. The Report concluded that Petitioner failed to show prejudice on either ground, because the trial court during the plea colloquy emphasized that there were no sentencing guarantees and elicited Petitioner's testimony that no one had promised him any specific sentence. Attorney Weisman similarly testified at the 3.850 evidentiary hearing that he never promised Petitioner any specific sentence and had cautioned that concurrent sentences, while highly likely in his opinion, were not a guarantee. Moreover, the Report found Petitioner's allegation that he would not have entered an open plea to a potential life sentence had he known about the fine to be "incredible."

Citing *State v. Leroux*, 689 So. 2d 235 (Fla. 1996), Petitioner objects that his testimony that no one had extended any sentencing guarantees does not foreclose his claim. *Leroux* is unavailing. There, the Florida Supreme Court held that defendant was entitled to an evidentiary hearing because his general attestation during the plea colloquy that he had not been "promised anything" did not "conclusively" refute his allegations of counsel's misadvice as to his sentence. However, the Florida Supreme Court advised that when a court specifically explains that a defendant cannot rely on anyone's estimates of his actual sentence, "such a defendant would have no basis to complain later." *Id.* at 237. As Petitioner concedes, that inquiry was made here.

Petitioner's remaining objections that the alleged confusion during the plea colloquy and counsel's failure to advise him about the fine were prejudicial are largely reargument of his view of the facts. For the reasons in the Report, Petitioner has not established prejudice on either of these points. The court repeatedly warned him of a possible life sentence with a consecutive prison term during the plea colloquy, and it strains credulity to believe that a fine – even a

8

$50,000 fine – would be the sticking point for someone insisting on entering an open plea to a potential life sentence. That the fine would not have changed Petitioner's decision to plead is further evidenced by the fact that he never moved to withdraw his plea after sentencing or challenged the fine on direct appeal. Thus, the state court's denial of this claim was not unreasonable, because Petitioner's bare self-serving assertions, contradicted by record evidence and common sense, that he would not have pled had he known the maximum sentence or the fine do not establish prejudice. This is especially true given that both state judges to hear Petitioner's testimony at his 3.170 and 3.850 hearings found him not credible. This objection is overruled.

C. *Claim 6 – Trial counsel's alleged failure to investigate exculpatory evidence.*

Petitioner claims that had he known Attorney Weisman failed to investigate various issues, including the witness list Petitioner gave him and the amount of heroin seized, Petitioner would not have pled. The Report found that Petitioner failed to establish prejudice because this claim was both contradicted by the record and unsupported by any evidence other than Petitioner's post hoc, self-serving allegations.

In his objections, Flynn stresses the "gravity" of the issues he claims Weisman failed to investigate and maintains that the fact that these issues went to the "heart" of whether he had committed the crimes "bolsters" his assertion that he would have gone to trial had he known of counsel's alleged inaction. [DE 62, pp. 8-9.] This is simply reargument of the petition and reply. It provides no specific facts to contradict Petitioner's sworn testimony prior to changing his plea (and after Weisman announced the defense witness list) that Weisman had investigated everything Petitioner asked and that Petitioner did not want to call any other witnesses at trial.

In any event, Petitioner's objection does not bolster his claim, because the record evidence demonstrates that further investigation of this evidence would not have changed

Weisman's recommendation that Petitioner plead guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (noting that the test for prejudice where counsel's alleged error is failure to investigate potentially exculpatory evidence is "the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea"). Weisman testified at the 3.850 hearing that his original plan was to go to trial in the domestic violence case, but his strategy changed when Flynn picked up the drug case. [DE 19-5 (Tr. 11:1-13).] At that point, he advised Petitioner to admit his transgressions and drug dependency and focus on sentence mitigation.

Moreover, further investigation of the weak and speculative evidence Petitioner sets out would not have changed the outcome at trial. The state had strong evidence in both cases, including in the domestic violence case the alleged victim's testimony, her DNA on the weapon allegedly forced into her mouth, photographs of her injuries, and 911 recordings of the assault. While Petitioner argues that the state was focused on the wrong gun, Weisman testified that he was aware of the error and had planned to exploit it at trial but that it was curable, because the victim's DNA had been run on the proper firearm [DE 19-5 (Tr. 30:1-16, 46:8-25)]. Petitioner's claim that Weisman wholly failed to investigate his list of witnesses, including Officer Barnes and Detective Stein, the lead detective, is belied by the fact that Weisman elicited much of the desired testimony, including the victim's hysteria and possible drug use at the time of the incident [DE 41-2 (Tr. 31:16-32:23, 36:1-8, 59:9-21)], on cross examination during the *Arthur* hearing. As to the drug case, Weisman testified that he had discussed the drug amount with Flynn and that it was "clearly trafficking" under the statute [DE 19-5 (Tr. 9:19-22)]. Under these circumstances, the state court was not unreasonable to deny this claim, because Petitioner has not shown a reasonable probability that counsel would have advised him to go to trial in light of such evidence. *Cf. Diaz v. United States*, 507 F. App'x 849, 853 (11th Cir.) (affirming in a 28 U.S.C.

§ 2255 case denial of an evidentiary hearing on an ineffective assistance claim based on an alleged failure to investigate weak evidence where the government had a strong case and petitioner avoided a life sentence by pleading guilty) *cert. denied*, 134 S. Ct. 213 (2013). This objection is overruled.

> D. *Claim 9 – Sentencing counsel's alleged failure to prepare for sentencing and motion to withdraw plea.*

Finally, Petitioner faults sentencing counsel Attorney Millan for allegedly failing adequately to prepare for the hearing on Petitioner's motion to withdraw his plea and failing to investigate and present mitigating psychological evidence at sentencing.[7] The Report recommended denying this claim because Petitioner had not rebutted by "clear and convincing evidence" the state court's determination that sentencing counsel Millan's testimony to the contrary during the 3.850 evidentiary hearing was credible. Accepting Millan's credibility, Petitioner objects that the Report failed to consider that Millan "effectively conceded several elements of Flynn's ineffective assistance of counsel claim," including that Millan never obtained Weisman's file, which allegedly would have demonstrated Weisman's lack of preparedness for trial, and that Millan was unaware of Petitioner's psychological records.

This mischaracterizes the record. Although Millan's concededly "diligent" [DE 51, p. 30] efforts to get Weisman's file were unsuccessful, Flynn himself could have shared this information with Millan. However, Millan testified that Petitioner never told him that Weisman stated he was unprepared for trial [DE 19-5 (Tr. 57:13-15)] and that, when Millan discussed Petitioner's mental health issues with him, Petitioner "didn't tell [him] there was anything" [DE 19-5 (Tr. 60:24-61:8)]. Indeed, Flynn testified during his plea colloquy that he had never been

---

[7] Specifically, Petitioner claims Millan should have had him evaluated by a mental health professional and would have learned from Weisman's file that Petitioner was Baker Acted (involuntarily hospitalized) twice, was hospitalized for psychological issues, and suffered from an "emotional disorder," long-term drug dependency, and possibly a personality disorder and PTSD [DE 1, p. 22].

diagnosed with any mental illness or taken any prescribed psychotropic medication [DE 19-2 (Tr. 15:19-25)] and even refused to disclose the extent of his drug use to the probation officers preparing his pre-sentence report [DE 19-4 (Tr. 102:4-18)]. To the extent Petitioner blames Millan for expecting mitigating evidence to be provided to him on a "silver platter," Petitioner shares responsibility for the consequences of denying this information when asked. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

Nevertheless, much of the evidence Petitioner contends counsel should have investigated was presented. Petitioner testified as to his view of the adequacy of Weisman's trial preparations at the hearing on his motion to withdraw his plea [DE 19-3 (Tr. 31:15-21)] and described his drug use during sentencing. Despite Petitioner's apparent reluctance to divulge his mental health problems to probation, counsel, or the court, Millan uncovered and presented evidence of both Flynn's psychological issues and drug dependency at sentencing. Millan called several members of Petitioner's family, who testified about his character as well as his long-term drug use, mental issues, and hospitalization [DE 19-3 (Tr. 67:17-25)]. On cross-examination, the victim even testified that she believed Petitioner had been Baker Acted. [DE 19-4 (Tr. 142:4-25).] Petitioner has not shown how the presentation of additional, largely duplicative mitigation evidence would have resulted in a lesser sentence. Thus, Petitioner has failed to demonstrate that the state court's denial of this claim was "objectively unreasonable." This objection is overruled.

### Evidentiary Hearing

The Report recommended denying Petitioner's request for an evidentiary hearing, because Petitioner's claims are meritless and contradicted by the record. Petitioner maintains

that he never had a "full and fair" opportunity to be heard because the state judge terminated the 3.850 hearing during his testimony and a federal evidentiary hearing would "cure this denial of due process in Florida state court."

Petitioner's objection must be overruled. The two critical witnesses on Petitioner's 3.850 witness list [DE 19-1, pp. 50-51] for purposes of his ineffective assistance claims – Attorneys Weisman and Stein – testified, and Petitioner, through counsel, cross-examined them. Other than conclusory arguments that he is entitled to a federal evidentiary hearing to "provide further testimony" and "adduce testimony from other witnesses" in support of his claims, Petitioner does not specify what material evidence or testimony was improperly excluded or how it would be relevant. *See Carter v. Montgomery*, 769 F.2d 1537, 1543 (11th Cir. 1985) (holding that a petitioner is not entitled to a federal evidentiary hearing where he "does not explain which facts were not developed at the state hearing [or] make any attempt to demonstrate their materiality"); *see also Smith v. State*, 931 So. 2d 790, 800 (Fla. 2006) (holding that a petitioner does not demonstrate error in a limited state evidentiary hearing where he raises only "vague and conclusory" contentions that he was unable to present evidence without specifying what evidence or claims were wrongfully excluded). In fact, of the four other witnesses on Flynn's 3.850 witness list, only one – Detective Stein – is even mentioned in his petition.[8] As discussed above, Petitioner's allegations relating to Stein's and other witnesses' potential testimony lack merit. Thus, Petitioner is entitled to no relief, and his request for a hearing is denied.[9]

### Certificate of Appealability

Finally, the Court also denies the issuance of a certificate of appealability on all Claims 1

---

[8] The others were the state prosecutor, Flynn's mother, and Philip Reizenstein, who worked with Weisman.

[9] To the extent Petitioner is arguing that the termination of the hearing during his testimony violated due process, it is well established that a defect in state collateral proceedings is not a basis for habeas relief. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009).

through 11 presented in Flynn's petition. In order to obtain a certificate of appealability, Petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To meet this standard, a petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented here are adequate to deserve encouragement to proceed further." *Jones v. Sec'y, Dep't of Corr.*, 607 F.3d 1346, 1349 (11th Cir. 2010) (internal quotation marks omitted). Petitioner has not made this showing as to any of the grounds alleged in his petition. Therefore, it is

ORDERED THAT

(1) Magistrate Judge White's Report [DE 59] is **AFFIRMED** and **ADOPTED**.

(2) Petitioner's request for an evidentiary hearing is **DENIED**.

(3) Pursuant to Rule 11 of the Rules Governing Section 2254 cases, a Certificate of Appealability is **DENIED**.

(4) Petitioner's Objections [DE 62] are **OVERRULED**.

(5) Petitioner's 28 U.S.C. § 2254 habeas petition [DE 1] is **DENIED**.

(6) All pending motions not ruled upon are **DENIED AS MOOT**.

(7) This **CASE IS CLOSED**.

DONE AND ORDERED in Miami, Florida, this 6th day of November, 2015.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Hon. Patrick A. White
    Counsel of Record